F. G. HENTIG, *et al.*, v. GEO. T. GILMORE, *County Clerk, &c.*

1. ALLEY IMPROVEMENTS; *Estimate.* *Before* alley improvements are made in a city of the first class, an estimate of the cost of the work should be made by the city engineer, "*under oath.*"

2. ESTIMATE *in Detail.* And the estimate should also be made *in detail*, and should not be left indefinite and uncertain; and such an estimate is a condition precedent to the making of the improvements.

3. APPRAISEMENT; *Oath of Appraisers.* And the appraisement of the property for taxation should not be made until "*after*" the appraisers have "taken and subscribed an oath to make a true and impartial appraisement."

4. PROVISION OF STATUTE, *Discussed.* That provision of § 22 of the first-class-city act, as amended on March 7, 1883, which provides for setting aside money in the city treasury by an appropriation ordinance, discussed.

5. ESTIMATES; *Special Taxes.* Where estimates are made by the city engineer for a stone pavement, and a different kind of pavement is constructed, *held*, that special taxes cannot be levied to raise a fund for the payment for the construction of such pavement.

6. SPECIAL TAXES; *Rule of Apportionment.* Special taxes for local improvements must be levied with reference to the special benefits conferred upon the owners of the property taxed; but, as a general rule of apportionment, the taxes may be levied upon the property taxed in proportion to the value thereof without the improvements thereon.

7. GRADING ALLEYS, *Taxes for, How Paid.* Special taxes for the grading of alleys cannot under the statutes be levied upon the abutting lot-owners, but the grading must be paid for out of the general improvement fund.

*Error from Shawnee District Court.*

ACTION brought on March 11, 1884, by *F. G. Hentig* and others against *George T. Gilmore*, county clerk, *Bradford Miller*, county treasurer, and the *City of Topeka*, to perpetually enjoin the defendants from collecting certain special taxes levied by the city of Topeka upon the lots of the plaintiffs to pay for grading and paving certain alleys in said city. The action was tried by the court without a jury, and the court made certain special findings of fact and conclusions of law, and rendered judgment upon such findings and conclusions in favor

of the defendants and against the plaintiffs for costs. They bring the case to this court for review. The findings and conclusions read as follows:

"*First.* That the defendant, the city of Topeka, was, in the years 1881, 1882, and 1883, a duly-organized city of the first class, situated in the county of Shawnee, in the state of Kansas; that the defendant George T. Gilmore was, at the time this action was brought, the county clerk of said Shawnee county; and the defendant Bradford Miller was, at the time this action was brought, and is now, the county treasurer of said county; that said plaintiffs own respectively the real estate situated in said city of Topeka, alleged in the plaintiffs' petition to be respectively owned by them.

"*Second.* That prior to the commencement of the paving of the alleys hereinafter mentioned, the mayor and councilmen of the city of Topeka, deeming such work of paving necessary, directed the city engineer to prepare and submit a detailed estimate of the cost, and nature and character of the pavement to be used in paving said alleys; that, pursuant to said direction, the said city engineer did, on the 21st day of May, 1883, submit to the city council such estimates, which estimates are in words and figures as follows, to wit:

'Estimate of expense for grading and paving alleys between Seventh street and Eighth avenue, and between Kansas avenue and Quincy street, as follows:

| | |
|---|---|
| For excavating 850 yards, at 30 cents per yard.......... | $255 |
| For paving 14,000 feet, at 18 cents per foot............... | 2,520 |
| | $2,775 |

'J. HUNTOON, *City Engineer.*
'Approved by council, May 21st, 1883.— GEO. TAUBER, *City Clerk.*

'Estimate of cost of paving alley running east and west between Fifth street and Sixth street, and between Kansas avenue and Quincy street, viz.:

| | |
|---|---|
| 3,300 feet of paving, at 18 cents per foot............... | $594 00 |
| 123 cubic yards excavating, at 25 cents per yard..... | 28 75 |
| | $622 75 |

'J. HUNTOON.
'The within estimate approved by council, May 7, 1883.— GEORGE TAUBER, *City Clerk.'*

"And this was the only estimate filed, and the one under which the work was done.

"*Third.* That afterward, to wit, on the —— day of ——, 1883, the said mayor and city council duly advertised for bids for the construction of said work, and in pursuance of such invi-

tation and advertisement, bids were duly submitted to and were accepted by said mayor and city council, for the paving of the alleys between Fifth and Sixth streets, and the alleys between Seventh and Eighth streets, and which work and labor was afterward duly performed by said contractors in accordance with their said contract, and duly accepted by said city. Said contracts were let to the lowest responsible bidders, and the contracts for said works were in writing, each of said contracts being for the specific work provided for in the estimate, and upon which said contract was based.

"*Fourth.* That afterward, and upon the completion of said work, the same was duly accepted by the mayor and city council of said city, and scrip or warrants issued to said contractors according to the terms and conditions of said contracts.

"*Fifth.* That afterward, and on the ―― day of September, 1883, for the purpose of paying the cost and expense of doing such work, the mayor and city council of said city of Topeka first caused the lots and·pieces of ground abutting on said alleys to be appraised by three disinterested appraisers, duly appointed for that purpose; and did by ordinance duly levy and assess according to law the taxes against the lots and pieces of ground abutting on said alleys, to an amount sufficient to pay said cost and expense, but no more—that is to say, upon the lots and pieces of ground abutting on said alleys, situated between Seventh and Eighth streets, for the full cost of paving the alley in said block; and upon the lots and pieces of ground abutting on said alley between Sixth and Seventh streets, for the full cost and expense of said paving in said block; and on the lots and pieces of ground abutting on the alley between Fifth and Sixth streets, for the full cost of said paving in said alley in said block; which taxes were duly certified by the clerk of said city to the defendant George T. Gilmore, as county clerk of Shawnee county, Kansas, and were by him placed upon the tax-roll of said county for collection, by defendant Miller, as county treasurer of said Shawnee county.

"*Sixth.* That after said appraisement was returned by said appraisers, and filed with the city clerk of said city, the mayor and city council caused a notice, of which the following is a copy, to wit:

'OFFICIAL NOTICE.

'MAYOR'S OFFICE, CITY OF TOPEKA.
'There will be a special meeting of the city council on Monday, September 24, 1883, at 8 o'clock P. M., for the purpose of hearing any complaints that may be made as to the valuation assessed by the appraisers of any lots.

or pieces of ground abutting on the several alleys upon and along which paving has been done by the city of Topeka, to wit:

'In the alley bounded on the north by Fifth street east, by Kansas avenue on the east, by Sixth avenue on the south, and Jackson street on the west.

'In the alley bounded on the north by Sixth avenue east, on the south by Seventh street, by Kansas avenue on the east, and Jackson street on the west.

'In the alley bounded on the north by Seventh street, on the east by Quincy street, on the south by Eighth avenue east, on the west by Kansas avenue.

'Witness my official hand and seal of the city of Topeka, hereto attached, this 22d day of September, 1883.

(Signed)          M. HEERY,
*President of the Council, Acting Mayor.*

Attest: G. TAUBER, *City Clerk.*'

To be published in the official paper of said city, notifying property-owners in said city whose property was subject to taxation and assessment for the payment of said work, that such appraisement and valuation of said property had been made, with the view of levying a tax thereon to pay for the paving of said alleys, and that there would be a meeting of said city council on the — day of ——, 1883, at which meeting they could appear to show cause why said appraisement and valuation was not just and equitable; and at said meeting, there being no objection made to said appraisement and valuation, said mayor and council approved and ratified said appraisement and valuation, and by ordinance levied thereon the tax as aforesaid.

"*Seventh.* There was no money in the city treasury at the time said work was undertaken, or afterward, with which to pay for said work, and no money was set apart in the treasury of said city by ordinance or otherwise, before or at the time said work was undertaken, to pay for the same.

"*Eighth.* That the material used in paving said alleys was good, and the work and labor performed was done in a good and workmanlike manner.

"*Ninth.* That after the completion of said work, and before the levy of the tax to pay for the same, the mayor and councilmen of said city appointed Albert Parker, N. L. Gage, and A. V. Auter, three resident disinterested householders of said city, to make an appraisement and valuation of said lots and pieces of ground subject to taxation for the payment of such grading and paving of said alleys, who thereupon took and subscribed to an oath and affidavit in words and figures as follows, to wit:

'STATE OF KANSAS, COUNTY OF SHAWNEE, CITY OF TOPEKA, SS.

'Albert Parker, N. L. Gage, and A. V. Auter, all of lawful age, being first duly sworn, say that each of them are householders of the city of

Topeka; that they will faithfully and impartially discharge their duties as appraisers for the purpose of assessing the valuation of lots and pieces of ground abutting on certain alleys in the city of Topeka, Kansas, upon and along which paving has been done by the city of Topeka, regardless of improvements on all such lots and pieces of ground. So help us God.

'[Signed] ALBERT PARKER.
N. L. GAGE.
A. V. AUTER.

'Subscribed and sworn to before me, this fifth day of September, 1883.
'[Signed] GEORGE TAUBER, *City Clerk.*'

CONCLUSIONS OF LAW.

" The court finds as conclusions of law, as follows:

" *First.* That the estimates submitted by the city engineer, and approved by the mayor and council, were in substantial conformity with the law, and therefore valid.

" *Second.* That the contracts entered into by the city and the contractors for the grading and paving of said alleys were in substantial conformity with the law, and therefore valid.

" *Third.* That the appraisement and valuation of the property for the purpose of levying a tax thereon for the payment of said grading and paving of said alleys were in substantial compliance with the law, and therefore valid.

" *Fourth.* That the proceedings of the mayor and city council in the assessment and levy of the tax upon said property for the payment of the grading and paving of said alleys was a substantial compliance with the law, and therefore valid and legal.

" *Fifth.* That the plaintiffs are not entitled to the relief prayed for in this action, and judgment will be for the defendants."

Judgment was accordingly rendered for defendants. The plaintiffs bring the case to this court.

*F. G. Hentig,* for plaintiffs in error.

*J. D. McFarland,* for defendants in error.

The opinion of the court was delivered by

VALENTINE, J.: This was an action, commenced on March 11, 1884, by F. G. Hentig and others, against George T. Gilmore, county clerk, Bradford Miller, county treasurer, and the city of Topeka, to perpetually enjoin the defendants from collecting certain special taxes levied by the city of Topeka upon the lots of the plaintiffs to pay for grading and paving

certain alleys in said city. The action was tried by the court without a jury, and the court made certain special findings of fact and conclusions of law, and rendered judgment upon such findings and conclusions in favor of the defendants and against the plaintiffs for costs. The plaintiffs bring the case to this court for review.

The plaintiffs claim that the said special taxes are void for the following reasons: (1) That the estimates of the cost of the work made by the city engineer were not under oath; (2) that the said estimates were not made in detail, and were indefinite and uncertain; (3) that the oath taken by the appraisers who appraised the lots for taxation was not in the form prescribed by statute, and was insufficient; (4) that no money was in the city treasury, or set apart or appropriated, for the payment of the work prior to its completion; (5) that the estimates were for a stone pavement, while the material used was asphalt; (6) that the taxes were not levied with any reference to special benefits to the plaintiffs or to their property; (7) that the taxes were levied to pay for grading the alleys, as well as for paving the same.

We shall consider these matters in their order.

I. It seems from the record that the estimates of the cost of the work were not made under oath. This was wrong. Section 22 of the first-class-city act provides, among other things, that "*before*" any kind of work or improvement shall be commenced "a detailed estimate of the cost thereof shall be made *under oath* by the city engineer, and submitted to the council." A "detailed estimate" made "under oath" seems to be a condition precedent to the making of special improvements in cities of the first class. In connection with this point, see the following authorities: *Merritt v. Portchester*, 71 N. Y. 309; *Thompson v. White*, 4 Serg. & R. [Pa.] 135; *Cambria Street*, 75 Pa. St. 357; *Gilmore v. Hentig*, ante, p. 157.

II. It also appears from the record that the said estimates were not made *in detail*, but were made in very general terms, and were left very indefinite and uncertain. There were two estimates, according to the findings of the court below, one

filed May 21, 1883, for a portion of the work; and the other filed May 7, 1883, for another portion of the work. The first reads as follows:

"Estimates of expense for grading and paving alleys between Seventh street and Eighth avenue, and between Kansas avenue and Quincy street, as follows:

> For excavating 850 yards at 30 cents per yard..... $255
> For paving 14,000 feet at 18 cents per foot.......... 2,520
> _____
> $2,775
> J. HUNTOON, *City Engineer.*"

The second estimate is substantially the same in form as the first. It will be seen that nothing is said in these estimates about the character of the excavation or excavations, nor in what part or parts of the alleys the excavation or excavations were to be made. It will also be seen that nothing is said about the character of the paving, or what material or materials were to be used—whether brick, stone, wood, concrete, asphalt, or something else, or whether partly one and partly another; and nothing is said about the thickness of the pavement, whether two inches, two feet, or some other thickness. This does not constitute a compliance with said § 22 of the first-class-city act, which requires that "*before*" any work is done, or even contracted for, "a *detailed* estimate of the cost thereof shall be made under oath by the city engineer, and submitted to the council." The plaintiffs claim that a compliance with these provisions of § 22 is a condition precedent to the making of special improvements in cities of the first class, and that a failure to comply with such provisions will invalidate all proceedings having for their object the making of special improvements and the levying of special taxes; and we are inclined to agree with the plaintiffs in these particulars. (*Gilmore v. Hentig,* supra; *Welker v. Potter,* 18 Iowa, 85, and the cases heretofore cited.)

III. It also appears from the record that the oath taken by the appraisers who appraised the lots for taxation, was not in terms just such an oath as is required by the statute. (First-class-city act, §13.) The statute provides that the appraisers

may appraise the property "*after* having taken and subscribed an oath to make a true and impartial appraisement;" and it does not provide that they may appraise the property at any time before taking and subscribing such an oath; while the only oath that was in fact taken by the appraisers was that they would "faithfully and impartially discharge their duties as appraisers." The statute, as will be seen, does not give the form of the oath, but simply states what it should be; yet the plaintiffs claim that the exact oath provided for by the statute must be taken and subscribed; and that it is a condition precedent to the levying of the taxes, and cite as authority therefor the cases heretofore cited. (See especially the case of *Merritt v. Portchester*, 71 N. Y. 309.) It is hardly necessary for us to express our opinion with reference to the sufficiency of the oath that was in fact taken.

IV. It also appears from the record that at no time prior to the completion of the work, or even afterward, was there any money in the city treasury, or set apart or appropriated, for the payment of the work. Is this material? Will it invalidate the taxes? Section 22 of the first-class-city act, as amended on March 7, 1883, provides, among other things, as follows:

"Before any such work or improvement, except building sidewalks, shall be commenced, the money to pay therefor must be set aside in the city treasury by an appropriation ordinance, regularly passed and published; and it shall be the duty of the city treasurer to take notice of such ordinance, and be governed thereby."

And the fortieth and forty-first subdivisions of § 11 of the first-class-city act read as follows:

"*Fortieth:* To appropriate money and provide for the current expenses of the city: *Provided,* That no indebtedness shall be incurred, or order, or warrant, or evidence of indebtedness, of the city shall be drawn or issued on the treasurer in payment of any indebtedness, to exceed the amount of funds on hand in the treasury at the time: *And provided further,* That every order or warrant drawn on the treasury shall express on

16—33 KAS.

its face to whom issued, and for what purpose allowed; and the same shall be payable to such person or his order.

"*Forty-first:* All expenditures of moneys, and for any purpose whatever, shall be in pursuance of a specific appropriation made by ordinance, and in no other manner."

The work was all done after these statutes took effect, and while they were in force. The members of this court have been unable to agree with reference to what should be the true interpretation or construction of said § 22, with regard to this subject. Hence we shall pass the question for the present.

V. It is also claimed by the plaintiffs that the estimates were made for a stone pavement, while the material used was asphalt. But such does not seem to be the case, from the findings of the court below. There is nothing in those findings that shows that the estimates were for stone pavements, or that the pavements were in fact constructed of asphalt. Both the findings and the estimates contained in the findings are entirely indefinite with respect to this matter. There was some evidence, however, introduced, which tends to prove that this claim of the plaintiffs is true. Now if this claim of the plaintiffs is true — that is, if the estimates were in fact made for stone pavements, and if the materials used for the construction of the pavement were not stone, but were some other kind of material — then we would think there was such a departure from the original plan of the work as would render the special taxes levied for the payment of the costs thereof illegal and void. ( *Sloan v. Beebe,* 24 Kas. 343.)

VI. Of course, special taxes for local improvements must be levied with reference to the special benefits conferred upon the owners of the property taxed; but such seems to have been done in the present case. The taxes were levied in accordance with § 13 of the first-class-city act, upon the adjacent property in proportion to its value without the improvements thereon; and this, as a general rule of apportionment, we think is valid. ( *Gilmore v. Hentig,* supra; *Downer v. Boston,* 61 Mass. 277; *Wright v. Boston,* 63 id. 233; *Brewer v. Springfield,* 97 id. 152.) Of course there might be special instances

where the taxes would not be legal or valid under such an apportionment; but the rule, we think, would be that the taxes would be valid if nothing else rendered them invalid.

VII. It also appears from the record that the special taxes levied in the present case were levied to pay for the grading of the alleys as well as for the paving of the same. Is this valid? Section 13 of the first-class-city act provides, among other things, as follows:

"SEC. 13. For opening, widening, extending and *grading* any street, lane, alley or avenue, and for doing all *excavating* and *grading* necessary for the same, and for all improvements of the squares and areas formed by the crossing of streets, and for building culverts, bridges, viaducts, and all crossings of streets, alleys and avenues, the cost or contract-price thereof shall be paid out of the general-improvement fund; and for all paving, macadamizing, curbing and guttering of the streets and alleys, the assessment shall be made for the full cost thereof on each block separately, on all lots and pieces of ground, to the center of the block," etc.

It will be seen from this section that the cost of all grading must be paid for out of the general-improvement fund; and payment for such improvements cannot be made or provided for by the levying of special assessments or special taxes upon the property of the adjacent lot-owners. In the present case we think that only the cost of the paving can be provided for by the levying of special taxes upon the adjacent property-owners. Of course where an alley has been sufficiently graded, or where it does not need to be graded, the small cost of simply preparing it for pavement might be included in the cost of the pavement as a mere incident thereto, but under the foregoing statute the full cost of what is generally known or understood to be grading cannot be included in the cost of the pavement. The two kinds of improvement must be provided for separately, and paid for separately. The cost of the grading must be paid for out of the general-improvement fund, while the cost of the pavement may be paid for from special taxes levied upon abutting lot-owners. This might perhaps be different, except for the foregoing statute.

We think the special taxes levied in the present case are illegal, and at least voidable, and that the plaintiffs are entitled to the injunction prayed for. The judgment of the court below will therefore be reversed, and the cause remanded for further proceedings.

All the Justices concurring.