MERRILL B. MILLS v. THE CITY OF DETROIT AND CHARLES K. TROMBLY, RECEIVER OF TAXES.

*Municipal corporations—Public improvements—Notice—Service —Publication.*

1. The provision of the charter of the city of Detroit requiring the council, before proceeding with any public improvement (except the opening of public streets), to secure from the board of public works an estimate of the cost of the proposed improvement, is *mandatory*, and proceedings for the construction of a public sewer, taken without such estimate, are void; citing *Butler v. Detroit*, 43 Mich. 552.

2. An ordinance requiring that notice of a proposed public improvement shall be served upon a land-owner personally, or by leaving it at his place of residence, is not complied with by leaving such notice on the table in his business office, during his absence therefrom.

3. Where a notice is required to be published for five successive days, its insertion in a paper for three successive days, and on the fifth and sixth days, is insufficient, it appearing that the paper was published on the omitted day, which was Sunday.[1]

Appeal from Wayne. (Hosmer, J.) Argued March 7 and 8, 1893. Decided April 21, 1893.

---

[1] See *Richter v. Harper*, *ante*, 221.

Bill to enjoin the collection of a sewer assessment. Defendant city appeals. . Decree affirmed. The facts are stated in the opinion.

*H. E. Spalding*, for complainant, contended:

1. "Residence" does not mean "office" or "place of business," but "home,"—where a man lives, as distinguished from where he works; citing *Campbell v. White*, 22 Mich. 178; *Briggs v. Leitelt*, 41 Id. 79; *Cass v. Gunnison*, 68 Id. 147; and the same definition is adopted for registration purposes in the case of all electors who are householders; citing How. Stat. § 2420; *Warren v. Board of Registration*, 72 Mich. 398; and "residence" and "business office" are contra-distinguished in the rule of this Court regarding the service of papers; citing Supreme Court Rule. No. 4.

2. Notice to the land-owner is essential before a special assessment can become a valid charge; citing *Thomas v. Gain*, 35 Mich. 155; *Kundinger v. Saginaw*, 59 Id. 355.

3. The failure to serve the notice is not remedied by its publication, if made, as the ordinance requires the use of both methods; citing *Powers' Appeal*, 29 Mich. 504.

4. There was no publication for five successive days. If a Sunday publication would be good, this position is clearly right, and, if not good, a period of five days should have been chosen within which Sunday did not fall; citing *Harrison v. Sager*, 27 Mich. 476; *Dale v. Lavigne*, 31 Id. 149; *Anderson v. Baughman*, 6 Id. 298; *Corey v. Hiliker*, 15 Id. 314; *Eason v. Witcofskey*, 29 S. C. 239.

*John J. Speed*, for appellant.

*Thomas T. Leete, Jr.*, of counsel for appellant, contended:

1. Before proceeding with the work, the common council received from the board of public works, not an estimate of cost, but a bid,—an offer from the contractor to build the sewer for a certain price. This bid was rejected, and the council did not proceed with the work, did not even advertise again for proposals for the work, until this bid was before it, which was a compliance with the provision of the charter, as no estimate could be as satisfactory as an actual proposition; citing *Wilkins v. Detroit*, 46 Mich. 120; *Cuming v. Grand Rapids*, Id. 150.

2. The publication cured any defect in the personal notice; citing *Williams v. Mayor*, 2 Mich. 580; and was sufficient; citing

Cooley, Tax'n (2d ed.), 288 (note 2); *Macadamizing Co. v. Huff*, 57 Cal. 331.

LONG, J. This suit is to enjoin the collection of a sewer assessment, on the ground that the original order-ing of the sewer, as well as the subsequent laying and levying of the assessment to pay for it, was illegal.

It appears that the matter was first brought to the attention of the common council by a petition. The board of public works, to which it was referred, recommended that the petition be granted, without giving any estimate of the cost of construction. The council, without any other report or any further information in the matter, and at the same session, ordered it built. Bids were advertised for, and only one bid made, which was $1.29 per lineal foot. This was rejected because of its being the only one made. Later the board of public works reported that the lowest bid was $1.35, and the committee to which it was referred recommended that a contract be made with this bidder. This was refused, and the common council directed a re-advertisement. This was never had; but the committee again reported, recommending that the contract be made with the former bidder, and a resolution was adopted directing the contract. The contract was made accordingly. There is nothing in the proceedings showing that at this time the council had ever had any estimate of cost before it, or information as to the extent of the work to be performed. The city charter provides:

"When any public improvement (except the opening of public streets) or public work is proposed, the common council shall, before proceeding with the same, refer the matter to said board of public works, and the board last named shall forthwith proceed to examine the same, and shall, as soon as practicable, report thereon to the common council, *giving detailed estimates of the costs of such works or improvements* (if any costs there will be), and shall

make such recommendation as said board of public works may deem expedient." Detroit Charter 1886, p. 189, § 312; 3 Laws of 1873, Act No. 392, p. 180.

This provision was construed in *Butler v. Detroit*, 43 Mich. 552. It was there held that the provision prohibited the council from ordering any public improvement or public work, or committing itself to the making thereof, and from incurring the expense of advertising for bids thereon, without first getting an estimate from .the board of public works. The present case cannot be distinguished from the rule laid down in that case.

Under the city ordinances, the owner of lands to be assessed is entitled to a notice of the intended improvement, and an opportunity to show cause why the assessment should not be levied. This notice is to be served on the owner of the lot by delivering the same to him personally, or by leaving it at his place of residence. It is not claimed that this notice was ever served as the ordinance directs.[1]

It appears that the complainant never received the notice, and the first he ever heard of the intended improvement or of the assessment was when called upon to pay the tax, though he lived in the city, and had for many years. It does not appear, either, that the notice was published as directed by the ordinances.[2]

The court below very properly decreed that the proceedings were void, and enjoined the collection of the tax.

That decree must be affirmed, with costs.

The other Justices concurred.

---

[1] The service was made by leaving the notice on .the table in complainant's business office, among other papers, during his absence.

[2] The ordinances required that the notice be published for five *successive* days in the official paper of the city. The notice was published December 11, 12, 13, 15, and 16. December 14 fell on Sunday, on which day the paper was published, but the notice did not appear therein.