THE CITY OF ARGENTINE V. HARRIET DAGGETT *et al.*—
SAME V. G. H. SIMMONS *et al.*

CITY — *Grading Street — Invalid Assessment.*  The grade of Second
street, in the city of Argentine, was duly established by ordinance.
Three-fourths of the owners of property fronting on the street there-
after petitioned for the grading of the street.  An ordinance pro-
viding for plans, specifications, estimates and the letting of the
contract for such grading was thereupon passed, and a contract
therefor afterwards duly let.  After such letting, another ordinance
was passed, materially changing the grade of the street.  There was
no new plan, estimate, contract or ordinance relating to such work,
but the grading was done in accordance with the grade last estab-
lished, and the city council, after its completion, passed an ordinance
assessing the cost against the abutting lots.  *Held,* That such assess-
ment is invalid.

*Error from Wyandotte District Court.*

BOTH of the above-entitled cases grow out of the grading
of Second street, in Argentine, a city of the second class, and
they are argued, briefed and submitted together.  The de-
fendants in error, who were plaintiffs below, are all owners
of property abutting on Second street, against which special
assessments were levied by an ordinance passed by the coun-
cil on the 1st of February, 1892.  From the special findings
of fact made by the court in both cases, it appears that on
the 15th of May, 1890, an ordinance was duly passed estab-
lishing the grade of certain streets; that of Second street, as
follows:

"Commencing on the south line of Metropolitan avenue,
elevation 95.1 feet; thence on a plane to the north line of
Silver avenue, elevation 97 feet; thence level across; thence
on a plane to the north line of Ruby avenue, elevation 124
feet; thence on a plane to the north line of Paul street, ele-
vation 212 feet; thence on a plane to the south line of Paul
street, elevation 215 feet; thence on a plane to the north line
of May avenue, elevation 307 feet; thence on a plane to the
south line of May avenue, elevation 315 feet."

On the 20th day of July, while said ordinance was still in

force, a petition signed by three-fourths of the owners of property fronting on Second street, between Metropolitan avenue and the south limit of the city, was presented to the council, praying that Second street be graded between said points, and that taxes therefor be levied upon the abutting property. On the 3d of August following, an ordinance was duly passed declaring it necessary to grade said street, and ordering that the work be done, and the cost charged upon the abutting property, also instructing the city engineer to prepare plans, specifications and estimates for the work, and file the same with the clerk, and directing the clerk to advertise for bids for said work, to be done according to said plans and specifications. At the meeting of the council on the 17th day of August, 1891, bids were received on said work, and the contract awarded at 22.8 cents per cubic yard. Prior to the letting of such contract, an estimate of the cost of said improvement was filed with the city clerk by the engineer, and the contract for said work was let at a less price than the estimate. On the same day, the council passed another ordinance, changing the grade of Second street, as follows: "Commencing on the south line of Ruby avenue, grade elevation 124 feet; thence south on a plane 350 feet to a point, grade elevation 174 feet; thence on a plane to the north line of Paul street (now Barker avenue), grade elevation 212 feet." The street was thereafter graded in accordance with the grade established by the last-mentioned ordinance, which was passed without the knowledge or consent of the plaintiffs. No plans, specifications or estimate for said work were ever made, and no ordinance was passed by the council providing therefor after the passage of said ordinance changing the grade. The change in grade was material, and placed the street in a substantially different condition from that which it would have been in if graded in accordance with the ordinance in force at the time the petition was presented and the engineer's estimate was made.

The court granted a perpetual injunction restraining the

collection of special assessments for the work. The defendant city brings the case to this court.

*W. S. Carroll,* for plaintiff in error.

*H. A. Bailey,* for defendants in error.

The opinion of the court was delivered by

ALLEN, J.: The main question discussed both in the briefs and on the oral argument is, as to the power of the city council to change the grade and bind the property owners after the presentation of a petition for the improvement, it being contended on the part of the city that there is no restriction on the power of the city council to change the grade at any time, and that the petitioners, when they ask that the street be graded, do so with a knowledge that the council has the right to make such changes in the grade already established as they deem proper. On the other hand, it is urged that the petitioners can only be required to pay for the very improvement for which they have asked; that, while the power of the council to change the grade is conceded, the petitioners are only bound by their petition, and that that is to to be construed as referring to a grading in accordance with the ordinance then in force. As the petition in this case merely asks that the street be graded at the expense of the property owners, we are inclined to the opinion that the city council had the power, before taking any steps toward a compliance with the petition, to change the grade if they deemed it wise to do so. The record before us, however, presents a stronger objection to the validity of the special assessments. Section 69 of the act to incorporate cities of the second class is as follows:

"SEC. 69. Before the city council shall make any contract for building bridges or sidewalks, or for any work on streets, or for any other work or improvement, an estimate of the cost thereof shall be made by the city engineer and submitted to the council, and no contract shall be entered into for any work or improvement for a price exceeding such estimate."

It appears from the findings of the court that the only estimate made by the city engineer was made before the change of grade. Can this be held a compliance with the law? If so, plans and estimates for one thing may be made, and a contract let thereunder for another and different thing. The fact that this was merely a contract for earthwork at a certain price per yard, coupled with the further fact, admitted in the case, that the contract was let at a less price than the estimate, might seem at first to render the change immaterial; but the trial court has found that the change was material, and that the value of the work to the property owners was materially affected by the change of grade. It might well happen, also, that the price of 22.8 cents per yard for earthwork, in accordance with the grade last established, would be much more profitable to the contractor than work in accordance with the first ordinance at the same price, owing to a change in the character of the earth to be moved, the depth of cuts, and the height of fills.

It appears in this case that the contract was actually let before the ordinance changing the grade took effect, but that the work was completed in accordance with the ordinance last passed. We have then a case in which plans, specifications, estimate and contract all called for a grading in accordance with the ordinance first passed, while the taxes attempted to be collected are to pay for work done in accordance with the last ordinance, materially different from that before contemplated. The ordinance providing for the work was also passed before that providing for the change of grade, and no ordinance was ever passed providing for the grading of the street as it was in fact graded. The tendency of the decisions in this court has been, and we think should be, toward a strict construction of the powers of municipal officers to levy special assessments. (*Newman v. City of Emporia,* 32 Kas. 456; *Barron v. Krebs,* 41 id. 338; *Sloan v. Beebe,* 24 id. 343; *Hentig v. Gilmore,* 33 id. 242) Section 32 of the statute governing cities of the second class provides for bringing streets to

grade at the cost of the city; and the cost of grading a street, it would seem, in the absence of any petition by the property owners, would be chargeable to all the taxable property of the city. The trial court having found that there was a substantial departure by the council from the original plan of the work, we are not at liberty to overlook the changes and say that they are unimportant. The judgment must be affirmed.

All the Justices concurring.