CITY OF DE SOTO ex rel. H. B. IRWIN, Appellant, v. W. A. SHOWMAN, Respondent.

St. Louis Court of Appeals, March 13, 1903.

1. **Municipal Corporation:** ESTIMATE SPECIAL ASSESSMENTS. Under section 5858, Revised Statutes 1899, providing that an estimate of the cost of any municipal improvement shall be made, such an estimate is a prerequisite to the letting of a contract for an improvement.

2. ———: ———: CONTRACTS. No contract can be entered into for a municipal improvement at a price exceeding the estimate of its probable cost.

3. ———: ———: ———: STATUTORY CONSTRUCTION. Under the provisions of section 5860, Revised Statutes 1899, requiring that contracts for municipal improvements shall be let on plans filed with the city clerk, a contract for an improvement, the plans for which were not filed with the city clerk, is invalid.

Appeal from Jefferson Circuit Court.—*Hon. F. R. Dearing,* Judge.

AFFIRMED.

*H. B. Irwin* for appellant.

(1) The defendant bases his claim that the resolution should have been passed with the formalities of an ordinance on the following cases: Poplar Bluff v. Hoag, 62 Mo. App. 672; Wheeler v. City of Poplar Bluff, 149 Mo. 36. (2) The substantial rights of the parties were not affected, even the resolution was not passed with the formalities of an ordinance, for the contract was let on the ordinance authorizing the work. Cole v. Skrainka, 105 Mo. 303; Sheehan v. Owen, 82 Mo. 465; Springfield v. Knott, 49 Mo. App. 612.

*E. J. Bean* and *J. E. Green* for respondent.

(1) We, therefore, confidently assert that under the statute and ordinances regulating taxation by special assessment for street improvements, unless the provisions of the ordinances have been fully complied with, the taxbills are void and no judgment can be rendered for the plaintiff in this case. Fruin v. Geist, 37 Mo. App. 509; City v. Eddy, 123 Mo. 546, and cases cited. The special taxbills sued on, which are the basis of this suit, are void. Rich Hill v. Donovan, 82 Mo. App. 386; Briffs v. Independence, 58 Mo. App. 241; Ramsey v. Marshall, 78 Mo. App. 421. It has been held that contracts which were not let by competitive bidding were void. McQuiddy v. Brannock, 70 Mo. App. 548. The charter and ordinances are part of the contract. Prior v. Kansas City, 153 Mo. 135. (2) On March 1, 1900, the city council passed the resolution, which was offered in evidence, declaring that "in its opinion, the general revenue fund of the city was insufficient to bring Fifth street to the established grade," etc., but the record of the proceedings of the council did not show that said

resolution was read three times and that the ayes and noes were recorded on its final passage, and that it received a majority of the votes of the members of the council, therefore, said resolution was not passed with the formalities required by law for the passage of an ordinance. Secs. 5832, 5859, R. S. 1899; Wheeler v. City of Poplar Bluff, 149 Mo. 36; Hoag v. City of Poplar Bluff, 62 Mo. App. 672; Kolkmeyer v. Jefferson City, 75 Mo. App. 678; Fogen v. Cape Girardeau, 38 Mo. App. 551.

GOODE, J.—Respondent is the owner of a lot in the city of De Soto, Missouri, which is a city of the third class. Said lot fronts on Fifth street between Boyd and Kelley streets in said city and this action was instituted to recover on a special taxbill for $70.35 issued to pay for grading, macadamizing, graveling, curbing and guttering Fifth street between said other streets, on a contract made by the city of DeSoto with the relator, Irwin, on or about June 20, 1900.

The defenses set up in the answer are as follows:

1. The city council did not declare by ordinance it was necessary to pave, macadamize, gravel and grade Fifth street.

2. The council passed no ordinance declaring that in its judgment the general revenue fund of the city was not in condition to warrant an expenditure from that fund for bringing Fifth street to grade.

3. No ordinance was published for two weeks in regard to the improvement of Fifth street.

4. No ordinance was passed to assess the cost of bringing said street to grade, nor for levying taxbills against said lots to pay for the grading.

5. No estimate of the cost of the work necessary to be done was made by the city engineer or other proper officer and submitted to the council.

6. The contract was not let by competitive bidding.

7. The contract was let to the relator at an adjourned meeting of the council, although the awarding of the contract had been previously postponed to the next regular meeting.

8. Irwin did not sign the contract with the city.

9. No plans and specifications of the work were filed with the city clerk before or after the bid was received.

10. The contract was awarded against the protest of the owners of the abutting property.

The proceedings of the city council preliminary to the awarding of the contract in question were exceedingly irregular, and proof of what they were rests largely on oral testimony, no record having been kept of many acts.

At the conclusion of the evidence the issues were submitted to the circuit judge for decision without declarations of law being requested by either side, and, hence, in so far as there is substantial conflict in the testimony, this court is bound to accept the judgment of the court below as a finding of the disputed facts in favor of the respondent.

The first four defenses were overthrown, we think, by the recorded proceedings.

Overlooking several minor objections to the validity of the taxbill, we will take up the more important points made against its validity.

a. The first is that no estimate was submitted to the council of the cost of the contemplated improvement and that the contract price exceeded the estimates actually made but not submitted. Such an estimate is a pre-requisite to the letting of a contract for a street improvement of the sort which is the basis of this controversy. R. S. 1899, sec. 5858; City of Independence v. Briggs, 58 Mo. App. (K. C.) 241; City of Marshall v. Rainey, 78 Mo. App. (K. C.) 416; Poplar Bluff v. Wheeler, 149 Mo. 36; Mills v. Detroit, 95 Mich. 422; Worthington v. Covington, 82 Ky. 265. It is also the

law that no contract can be entered into for such street work at a price exceeding the estimate of its probable cost. Citations supra.

In the present case there was evidence tending to prove three estimates were made; but said evidence tends strongly to show that neither of them was submitted to the council and shows positively that one of them was never submitted to it or even placed on file with the clerk. Two of the estimates were made by an engineer, employed by the city council for that purpose, by the name of Kinsey, and his testimony is that the two did not vary more than $300 and that each of them was much below the price at which the work was let to the contractor Irwin. Mitchim, who was city clerk when the bids were advertised for and received, testified that the contract was awarded on the Kinsey estimates.

Reliance is placed on a subsequent estimate made by an engineer named McGlashon, which was higher than the contract price. All that appears about McGlashon's estimate is that he made it after Kinsey had made two and that a councilman by the name of Lovett, who was chairman of the street committee, said he had charge of McGlashon's estimate; but it was not shown how McGlashon came to act in the matter or who authorized him to act. Lovett testified as follows:

"Q. Did you have charge of this estimate? A. Only charge of it there was. They gave me a copy of the specifications and left the rest with engineer McGlashon.

"Q. What did you do with them? A. I turned them over to the engineer. I said Mr. Kinsey was the engineer; he was employed by the city the first time the estimate was made on Fifth street. His estimate was filed with Mr. Mitchim (the city clerk) and after that I don't know where they went. And afterwards Mr. Kinsey came down and made some changes in it and made another estimate; or, I believe, I wrote Mr. Kinsey

to come down and make an estimate. I had no estimate from Mr. Kinsey while I was in office."

It was shown by the relator, Irwin, who had become city clerk before the trial, that he had made a diligent search among the city records for McGlashon's estimate and could not find it there, and that nothing of the kind was turned over to him as clerk.

It should be stated further that there was no record of the submission of any estimate of the cost of the work to the council, the whole matter resting in parol and Mitchim, who was clerk when the proceedings were had, swore that McGlashon did not make an estimate at all, or if he did, he (Mitchim) never saw it nor was it before the council.

b. The grade of the street was not established. An ordinance was enacted which undertook to fix the grade by reference to a "datum plane" (so-called) as fixed by "Ordinance No. —." The ordinance which purported to establish the grade specified numerous elevations above said "datum plane" at different points along the street, but the number of the ordinance prescribing the "datum plane" was left blank as indicated, and no such ordinance was introduced in evidence and the testimony tends to show none was ever passed. Now as to the bearing of this omission on the merits. We have the testimony of Kinsey, the engineer employed to fix the grade, concerning how he proceeded, and it is of the following tenor:

"Q. You established a grade the first time you came down to DeSoto to survey Fifth street? A. I don't remember; it was some time in 1900.

"Q. You paid no attention to the ordinance passed then? A. The grade I fixed was the first grade that had ever been fixed.

"Q. You was directed to go and establish a grade? A. Yes, sir.

"Q. You don't know whether this was established

with reference to any city ordinance in October, 1899?
A. No, sir; I don't know anything about it.

"Q. I will ask you if you established that grade
or provided for the doing of that work under that ordi-
nance? A. I made a statement similar to this; I don't
see anything to enable me to identify figures.

"Q. You had no ordinance to go by? A. I took
the trouble to inquire if there was an ordinance.

"Q. Then you proceeded to establish one your-
self? A. Yes, sir."

He further swore that the plans and specifications
he made would fit one grade, so far as the surface im-
provement of the street was concerned, as well as an-
other, but that there would be a difference in the cost of
the contemplated improvement according to the grade
established; which is obviously true, as a grade requir-
ing much filling and excavating would cost more than
one requiring little. Abutting property-owners can not
be taxed with the cost of bringing a street to a grade
never established by the city government; and the evi-
dence shows the present taxbill includes expense of that
kind.

As above stated, Kinsey's estimate, which was the
only one on file or before the council, fell far below the
price at which the contract was let to Irwin.

c. Further, Mitchim swore no plans and specifi-
cations for the work were ever filed and that at least one
other contractor who wished to bid called at the clerk's
office to see the plans and specifications, and finding
none, submitted no bid. The statutes require such con-
tracts to be let on plans and specifications filed with the
city clerk. R. S. 1899, sec 5860.

So far as we can see the contractor, Irwin, did his
work well and complied with his contract; but with the
best will in the world to help him collect the money he
earned, we have been unable, after the most careful
scrutiny, to find facts in the record which lead us to
doubt the propriety of the circuit court's judgment,

much less to set it aside. The judgment is, therefore, affirmed. *Bland, P. J.,* and *Reyburn, J.,* concur.