## MORROW v. BARBER ASPHALT PAVING CO. *et al.*

No. 609.   Opinion Filed September 21, 1910.

(111 Pac. 198.)

1.     MUNICIPAL CORPORATIONS—Public Improvements—Municipal Liens. A city can create a valid municipal lien for improving a street only when the improvement is made pursuant to law, and the mode established by statute is strictly followed.

2.     MUNICIPAL CORPORATIONS—Public Improvements — Contracts—Cost Exceeding Estimate. Under an act approved March 5, 1901 (Wilson's Rev. & Ann. St. Okla. 1903, sec. 446), providing that the mayor and city council may proceed with the work therein provided for, and "shall cause to be prepared sections, profiles and specifications of the work, together with a complete estimate of the cost," and that they shall have power to let the contract for the work, "which contract shall in no case exceed the estimate of cost submitted with the plans and specifications," a contract so entered into for such work at a price exceeding the estimate of its probable cost is void.

3.    **MUNICIPAL CORPORATIONS—Public Improvements—Assessment—Validity.** Where the mayor and city council fail to meet "to hear and adjust any complaint and review such assessment" at the meeting called pursuant to the notice required by Wilson's Rev. & Ann. St. Okla. sec. 449, such assessment is void.

4.    **SAME—Injunction—Limitation of Actions.** The period of limitation by statute (Wilson's Rev. & Ann. St. Okla. sec. 450) within which an action may be brought to set aside a special assessment made against the lots abutting upon a street to pay the cost of grading the same does not apply to bar a lot owner of an action to enjoin collection of such assessment, when the proceedings upon which it is based are void.

(Syllabus by the Court.)

*Error from District Court, Oklahoma County; Joseph G. Lowe, Judge.*

Action by J. S. Morrow against J. S. Alexander and the Barber Asphalt Paving Company. Judgment for defendants, and plaintiff brings error. Reversed and rendered.

*John H. Wright,* for plaintiff in error.—Citing: *Edgar v. City of Pittsburg,* 114 Fed. 589; *City of De Soto v. Showman* (Mo.) 73 S. W. 257; *City of Boonville v. Stephens* (Mo.) 95 S. W. 314; *Murphy v. City of Plattsmouth* (Neb.) 110 N. W. 749; *Moss v. City of Fairbury* (Neb.) 92 N. W. 722; *City of Argentine v. Simmons et al.* (Kan.) 37 Pac. 14; *Ireland v. Rochester,* 51 Barb. (N. Y.) 414; *John Burton et al. v. City of Chicago,* 53 Ill. 87; *Dunne v. West Chicago Park Com'rs* (Ill.) 42 N. E. 375; *Wheeler v. Chicago,* 57 Ill. 415; *Derby v. West Chicago Park Com'rs* (Ill.) 40 N. E. 438; *City of Nashville v. Weiser,* 54 Ill. 245; *Gilmore County Clerk v. Hentig et al.* (Kan.) 5 Pac. 781; *Steinmuller v. Kansas City* (Kan.) 44 Pac. 600; *Brennan v. City of Buffalo,* 8 Misc. Rep. 178.

*Scarritt, Scarritt & Jones* and *Flynn, Ames & Chambers,* for defendants in error.—Citing *Gibson v. Owen,* 115 Mo. 258; *Johnson v. Duer,* 115 Mo. 366; *Wahlgreen v. Kansas City* (Kan.) 21 Pac. 1068; *Topeka v. Gage* (Kan.) 24 Pac. 82; *Marshall v. Leavenworth* (Kan.) 24 Pac. 975; *Kansas City v. Grey* (Kan.) 61 Pac. 746.

TURNER, J. On February 16, 1905, J. S. Morrow, plaintiff in error, sued J. S. Alexander, county treasurer of Oklahoma county, and Barber Asphalt Paving Company, defendants in error, in the district court, seeking to restrain the former from collecting a certain assessment which Oklahoma City sought to enforce against certain of his lots in said city for the cost of paving the street on which they abut, on the ground that said assessment is void for the reason (1) that the mayor and city council let the contract of paving said street for a sum in excess of the estimated cost submitted with the plans and specifications by the city engineer; and (2) that the city council failed to meet on a day certain, or at any time, pursuant to notice published that it would do so, to hear and adjust any complaint and review the assessment complained of at such meeting. For answer Barber Asphalt Paving Company filed a general denial, and for a second defense alleged, in substance, that by the law of the territory of Oklahoma for making public improvements in the way of paving, etc., it is provided that no suit shall be sustained to set aside any assessment or certificate issued in pursuance of any assessment, or to enjoin the city council from making any improvement, other than for the failure of the city council to give jurisdictional notice of the making of such assessment, unless brought within 60 days after the passage of the ordinance making such final assessment, and that plaintiff's suit was not brought within that time. After demurrer filed and overruled to said second defense, and after said Morrow had answered, in effect, a general denial, and reply filed by plaintiff, there was trial to the court. At the close of the evidence there was judgment for defendant. Plaintiff brings the case here and assigns that the court erred (1) in not holding the contract void for the reason that the same was let for an amount in excess of the complete estimate of cost by the city engineer; and (2) that the court erred in not holding the assessment void for the reason that no opportunity was given to interested parties to protest as provided by law.

On the first assignment the record discloses that the com-

plete estimate of cost for paving Broadway from the south line of California avenue to the north line of Washington avenue, submitted by the city engineer, together with plans and specifications, was $8,561.72; that the same was approved by the mayor and city council on or about November 24, 1902; and that, pursuant thereto, the contract in question was awarded Barber Asphalt Paving Company to do said work at a complete cost of $9,272.24. Wilson's Rev. & Ann. St. Okla. 1903, § 446, provides:

"* * * At the time and place specified in the notice, the mayor and council shall award the contract to the lowest responsible bidder for the work, furnishing the material which may be selected, which contract shall in no case exceed the estimate of cost submitted with the plans and specifications. * * *"

For the reason that the same was awarded in violation of said statute, said contract and the assessment in question are void.

*City of De Soto ex rel. Irwin. v. Showman,* 100 Mo. App. 323, 73 S. W. 257, was a suit to recover a sum certain on a special tax bill issued to pay for grading, macadamizing, etc., Fifth Street between two other streets on a contract made by the city of De Soto with the relator, Irwin. Speaking to the point raised in the answer the court said:

"Overlooking several minor objections to the validity of the tax bill, we will take up the more important points made against its validity. (a) The first is that no estimate was submitted to the council of the cost of the contemplated improvement, and that the contract price exceeded the estimate actually made but not submitted. Such an estimate is a prerequisite to the letting of a contract for a street improvement of the sort which is the basis of this controversy. Rev. St. 1899, § 5858; *City of Independence v. Briggs* (K. C.) 58 Mo. App. 241; *City of Marshall v. Rainey* (K. C.) 78 Mo. App. 416; *Wheeler v. Poplar Bluff,* 149 Mo. 36, 49 S. W. 1088; *Mills v. Detroit,* 95 Mich. 422, 54 N. W. 897; *Worthington v. Covington,* 82 Ky. 265. It is also the law that no contract can be entered into for such street work at a price exceeding the estimate of its probable cost. Citations, *supra,*"— and affirmed the judgment of the trial court for defendant.

*Edgar v. City of Pittsburg* (C. C.) 114 Fed. 586, was a bill in equity filed by a property owner in Pittsburg against the city

to enjoin it from letting a contract for the construction of a portion of a city water filtration plant. At that time the governing act provided:

"Every contract for public improvements shall be based upon estimate of the whole cost, furnished by the proper officer through the department having charge of the improvement, and no bid in excess of such estimate shall be accepted."

Speaking to it, the court said:

"An estimate, then, being the basis on which the contract rests, it would seem that the estimated cost, not of a part, but of the whole proposed improvement, should be submitted to councils. Such, indeed, it appears to us is the provision of the statute. * * * By making such estimate, the executive officer places on record the basis of cost on which the councils are induced to contract, a safeguarding provision which must lead to deliberate and well-considered action on his part; and councils, being restricted in the extent of their contracts to the basis estimate, assume the responsibility of undertaking the improvement on such basis of cost. * * * That these provisions are obligatory basis to the city's contractive power, and mandatory, we have no hesitation in holding; and this view finds support in *Hepburn v. City of Philadelphia,* 149 Pa. 340, 24 Atl. 279, *Malone v. Same,* 147 Pa. 420, 23 Atl. 628, *City of Pittsburg v. Walter,* 69 Pa. 365, and *Reading City v. O'Reilly,* 169 Pa. 369, 32 Atl. 420. If the improvement is such that the statutory estimate of the whole cost can be made, the Legislature has said it must be made, and it alone shall be the basis of contract. If the improvement is such that no estimate can be made, then the Legislature has not given the city the power to contract. As the contract before us was not based on a statutory estimate, the legal question involved must be decided against the city. Let a decree be prepared enjoining the letting of the contract."

*City of Argentine v. Simmons,* 53 Kan. 491, 37 Pac. 14, was a suit to enjoin the collection of special assessments for grading streets. Theretofore the city council had duly passed an ordinance establishing a grade of certain streets. While the same was still in force a petition signed by three-fourths of the owners of property fronting on Second street between two streets was presented to the council, praying that Second street be graded between said

points and that taxes therefor be levied upon the abutting property.  Later an ordinance was duly passed declaring it necessary so to do and ordering the work done and the cost charged up to the abutting property.  Later, at a meeting of the council, bids were received on the work and a contract let at a price less than the estimate of said improvements furnished, together with plans and specifications, by the city engineer.  On the same day the council passed another ordinance changing the grade of said street, which was thereafter graded according to the grade established by said ordinance which was passed without the knowledge or consent of plaintiff.  No plans, specifications, or estimate of said work was ever made.  The change of grade was material, and placed the street in a substantially different condition from that which it would have been in had the same been graded in accordance with the ordinance in force at the time the petition was granted and the engineer's estimate was made.  At that time section 69 of the governing act (Kan. St. 1889, p. 825) provided:

"Before the city council shall make any contract for building bridges or sidewalks or for any work on streets, or for any other work or improvement, an estimate of the cost thereof shall be made by the city engineer and submitted to the council, and no contract shall be entered into for any work or improvement for a price exceeding such estimate."

The court said:

"It appears from the findings of the court that the only estimate made by the city engineer was made before the change of grade.  Can this be held a compliance with the law?  If so, plans and estimates for one thing may be made, and a contract let thereunder for another and different thing.  *  *  *  We have, then, a case in which plans, specifications, estimate, and contract all called for a grading in accordance with the ordinance first passed, while the taxes attempted to be collected are to pay for work done in accordance with the last ordinance, materially different from that before contemplated.  The ordinance providing for the work was also passed before that providing for the change of grade.  The tendency of the decisions in this court has been, and we think should be, towards a strict construction of the powers of municipal

officers to levy special assessments. *Newman v. City of Emporia,* 32 Kan. 456, 4 Pac. 815; *Barron v. Krebs,* 41 Kan. 338, 21 Pac. 235; *Sloan v. Beebe,* 24 Kan. 343; *Hentig v. Gilmore,* 33 Kan. 242, 6 Pac. 304"—

and held the assessment invalid, and affirmed the judgment of the trial court.

See, also, *Moss v. City of Fairbury et al.,* 66 Neb. 671, 92 N. W. 721, where the court in the syllabus said:

"The provisions in regard to such estimates are jurisdictional, and the cost of a sidewalk, laid without a compliance therewith cannot be made the basis of the levy of a special assessment against the adjacent property."

See, also, *Murphy v. City of Plattsmouth,* 78 Neb. 163, 110 N. W. 749.

As to the second assignment of error, the statute (Wilson's Rev. & Ann. St. Okla. 1903, § 449) provides, in substance, that, upon the filing of the report of the board of appraisers, the city clerk shall cause the same to be published, together with a notice that the city council will meet on a day certain, not less than 15 days thereafter, to hear and adjust any complaint and review such assessment at such meeting, and that the mayor and council shall have power to revise, correct, and review such appraisement and assessment in any particular, and their action in the premises shall be final. The record discloses that this was done, and that January 26, 1904, was the day so set for hearing protests; that on said day the city council failed to have present a quorum and adjourned until February 8, 1904; and that no action was taken on plaintiff's protest.

In *Derby v. West Chicago Park Commissioners,* 154 Ill. 213, 40 N. E. 438, from a judgment of the trial court confirming a special assessment on petition of the West Park Corporation Commissioners, the property owner brought error. The assessment was made by virtue of an ordinance of the city. The petition and the assessment roll were filed in the circut court of Cook county on June 16 1892, and on June 28, 1892, the assessment was confirmed. It appeared from the petition that the proceedings were

had pursuant to an act of June 16, 1871 (Laws 1871-72, p. 579), and an act approved April 9, 1879 (Laws 1879, p. 216), being an act entitled:

"An act enabling park commissioners or corporate authorities to take, regulate and improve public streets leading to public parks to pay for the improvements thereon and in that behalf to make and collect a special assessment or special tax on contiguous property."

Section 3 of said act of 1871, among other things, provided:

"The said corporate authorities shall give at least ten days' notice in one or more newspapers published in the county in which such towns are situated of the time and place of their meeting for the purpose of making said assessment; and may adjourn such meeting from time to time until the same shall be completed. * * * All parties interested may appear before said corporate authorities, and may be heard touching any matters connected with the assessment. When the same shall be completed it shall be signed by the said corporate authorities or by a majority thereof, and returned to the circuit court of the county in which said towns are situated, and filed with the clerk of said court."

The petition further showed that at a meeting of the park commissioners held May 17, 1892, an order was entered directing their secretary to prepare, publish, and advertise according to law that on June 14, 1892, at 4 o'clock p. m., at the office of the commissioners, they would meet to make an estimate of the probable cost of the boulevard improvement in question and also to make special assessments to pay such estimated cost on contiguous property, that thereupon said notice was duly published giving notice that on June 24, 1892, a meeting of said park commissioners would be held for said purpose. The petition also showed that, pursuant to said notice, said commissioners held a regular meeting on June 14, 1892, for said purpose, and proceeded to estimate the cost of said improvement and to make an assessment upon the contiguous property to pay for the same, which assessment was returned to the circuit court and filed with the petition on June 16th, as stated. In passing, the court said that it was thus shown on the face of the petition that the estimated cost

of the assessment and the assessment roll were all made on June 14th, 10 days before the day fixed in the published notice for that purpose, and filed June 16th, or 8 days prior to the time when, by published notice, the assessment should have been made. It thus appeared that the estimate of cost and the assessment and all proceedings in the cause had before the commissioners were taken without any notice whatever to the parties interested and without affording them an opportunity to appear and protest, and for that reason the petition was not sufficient to sustain a judgment of confirmation, and reversed and remanded the cause.

In *Burton et al. v. City of Chicago,* 53 Ill. 87, the charter of the city required objections to special assessments to be filed at least one day prior to the meeting of the common council at which the confirmation of the assessment would be applied for. This was construed in that case to mean that a day shall intervene between the last day of publication of notice of such application and the action of the council and that day not a Sunday, and that where the last day of such publication was a Sunday, and where the assessment was confirmed on the following Monday, the intervening Sunday being *dies non juridicus,* it was held that the parties interested had no opportunity, such as the law contemplated, to file their objections and a judgment on the assessments was reversed on that ground.

In *Ferguson's Appeal,* 159 Pa. 39, 28 Atl. 130, the seventh clause of the first section of the governing act provided:

" * * * On the day named, if no exceptions are filed or, if exceptions are filed, then upon a subsequent day to be named by them, said viewers shall file their report in the proper court of common pleas, and thereupon said court shall approve the same *nisi,* and within twenty days thereafter any person in interest may file exceptions to any part or the whole of said report."

Such language was held by the court to be specific and mandatory. Finding that the viewers did none of this, but proceeded to file their report on the first day named by them in their notice, the court said the same was filed without authority of law, and, as it deprived appellant of the right the statute gave him for filing

exceptions, reversed the judgment of the trial court affirming the report of the viewers, and held that the property owners could only be made subject to a lien for the improvement when the power conferred upon the municipal authorities had been legally exercised.

*City of Nashville v. Weiser et al.*, 54 Ill. 246, was an application to the county court of Washington county for a judgment against lands and town lots in said city for a tax levied by the city for school and other purposes. Judgment was rendered on the application ordering the sale of the lands and town lots. On appeal the circuit court reversed the judgment of the county court, and the judgment of the circuit court was affirmed by the Supreme Court. Article 9 of section 2 of the charter required the city council to fix the time for hearing objections to the assessment list, and required the register to give notice of the time and place of hearing in a certain newspaper. The council fixed the time, but failed to attend, thereby depriving all persons desirous of doing so of the right to urge objections. The court held this to be contrary to law and violative of the rights of the taxpayers. Speaking to the duty of the council, the court said:

"They fixed a time for hearing, but, for some reason, failed to meet, thus as effectually depriving the taxpayers of their rights as if no time had been specified for the purpose. Failing to meet at the time named, it was their plain duty to have fixed another time, and given the notice required by their charter. For the failure to comply with this material requirement of the law, the tax is void and cannot be collected."

See, also, *Ireland v. City of Rochester*, 51 Barb. (N. Y.) 414.

The proceedings upon which this assessment is based being void, the statute of limitations (Wilson's Rev. & Ann. St. Okla. 1903, § 451) that "no suit shall be sustained to set aside any assessment or certificate issued in pursuance of any assessment or to enjoin the city council from making any improvement other than for the failure of the city council to give the jurisdictional notice of the making of such assessment by the publication and posting of the ordinance appointing the appraisers and fixing the time of

their meeting, unless brought within sixty (60) days after the passage of the ordinance making such final assessment," does not apply.

In *Steinmuller et al. v. City of Kansas City et al.*, 3 Kan. App. 45, 44 Pac. 600, plaintiffs in error filed a petition in the district court to enjoin defendants in error from collecting a certain assessment which said city sought to enforce against their lots for the cost of grading the streets upon which they fronted. The trial court sustained a demurrer to plaintiffs' evidence, rendered judgment against them, and taxed them with the cost. The evidence tended to prove that on August 14, 1888, pursuant to a petition presented to the mayor and city council by certain resident owners of lots situated on the street thereafter improved, bearing the indorsement of the city engineer that the signers thereof constituted a majority of the resident property owners of a majority of the front feet therein described, the same was ordered spread of record, and the work, by proper ordinance, ordered done. The grading therein provided for having been completed, the council passed an ordinance assessing the cost of the work against the several lots and parcels of land abutting thereon, and the amounts assessed against the lots of plaintiffs were duly certified to the county clerk of the county and entered upon the tax roll. The first question presented was whether the assessment was void; and, second, were plaintiffs barred from maintaining the suit because it was not commenced within 30 days from the time the amount of such assessment was ascertained. For the reason that the petition was defective, it was held, in effect, to amount to no petition, and that the assessment attempted to be made against the lots was without authority and illegal and void. On the second question the court said:

"Are the plaintiffs barred by lapse of time of any remedy against this illegal assessment? For the purpose of requiring promptness in making objections to the validity of assessments for such improvements, the Legislature provided: 'No suit to set aside the said special assessments, or to enjoin the making of the same,

shall be brought, or any defense to the validity thereof be allowed, after the expiration of 30 days from the time the amount due on each lot or piece of ground liable for such assessment is ascertained.' Gen. St. 1889, § 590; Laws 1887, c. 101, § 1. We do not think this statute can be interposed to aid an assessment which is void on jurisdictional grounds on the face of the proceedings. It should be held to apply only to such defects and irregularities in the proceedings as would render them voidable, but not void. * * * As the proceedings which led up to the assessment were had without jurisdiction, and consequently without any legal effect upon the property rights of the plaintiffs, the mere failure to act certainly could not alter the situation of either party. As said in *McCoy v. Anderson,* 47 Mich. 505, 11 N. W. 290: 'Any other view would be open to the objection of attempting to deprive parties of their property without due process of law, and this evidently was not contemplated by the statute relied upon' "—
and reversed and remanded the case, and in the syllabus said:

"The period limited by statute within which an action may be brought to set aside a special assessment made against the lots abutting upon a street, to pay the cost of grading the same, does not apply to bar a lot owner of an action to enjoin the collection of such assessment, when the proceedings upon which it is based are void."

See, also, *Marshall et al. v. City of Leavenworth,* 44 Kan. 459, 24 Pac. 975, where it was also held that said statute was only intended to apply to irregularities and not to bar a lot owner of an action to enjoin the collection of an assessment based on void proceedings. The same is true of our statute *supra.*

We are therefore of opinion that the assessment in question is void for the reasons stated, and, being void, the collection thereof should be perpetually enjoined, and it is so ordered. The judgment of the trial court is reversed and rendered.

All the Justices concur: