HANNAH RITCHIE, *et al.*, v. THE CITY OF SOUTH TOPEKA, *et al.*

1. CITY — *Change of Class — Officers.* When a city of the third class is made a city of the second class, the city officers continue to be the officers of said city, until new officers are elected and qualified under the ordinances of the city of the second class.

2. ORDINANCES, *Not Repealed.* When a city of the third class is by proclamation of the governor declared to be a city of the second class, none of its ordinances regulating the levying of taxes are repealed.

3. MAYOR — *Building Sidewalks.* Where one has been elected mayor of a city, and in such capacity directed the building of sidewalks and the putting down of crossings, he cannot be heard to deny that such streets are public streets.

4. SIDEWALK TAX — *Collection, When Not Restrained.* The owner of abutting property cannot stand silently by and see long lines of

sidewalk built, which greatly benefit his property, and immediately after their completion bring his action to restrain the collection of assessments made to pay for such sidewalks, when all the facts averred in his petition as grounds for such action were known to him before they were built.

*Error from Shawnee Superior Court.*

INJUNCTION by *Ritchie* against the *City of South Topeka*, and others. The opinion contains a substantial statement of the facts. Trial at the November Term, 1886, and judgment for defendants. The plaintiff brings the case to this court.

*W. P. Douthitt, E. E. Chesney,* and *Waters & Chase,* for plaintiff in error.

*W. A. S. Bird,* city attorney, for defendants in error; *C. M. Foster,* of counsel.

Opinion by HOLT, C.: This was an action brought by John Ritchie, now deceased, in the superior court of Shawnee county, to enjoin the collection of taxes levied by the city of South Topeka in the year 1886, and the special assessment made by the city for paying for certain sidewalks laid upon the streets and avenues abutting upon the land and lots of the plaintiff. The plaintiff alleged in his petition that he is the owner of the northeast quarter of section six, township twelve, and range sixteen east, Shawnee county, except such parts thereof as he had sold to certain individuals; that said tract was borne upon the tax-rolls of said county as land; that said tract had no other rightful description than as land, and as a part of said quarter-section. The alleged ground of illegality of the general tax is, that no quorum of the city council was present when the ordinance levying the general tax was passed, and that a majority of the city council were not qualified under the law to hold the office. The main objection urged against the legality of the sidewalk assessment is, that the sidewalks built or repaired upon the plaintiff's land were not built or repaired upon any avenue, street, alley or other public ground within the limits of the city; that the

24 — 38 KAS.

plaintiff had at no time platted or otherwise dedicated, sanctioned or acquiesced in the platting of said land for public uses, but on the contrary he had sought by every means in his power to have the land remain by its original description as land. He further alleged that the ordinance levying the assessment was passed long prior to the building and repairing of said sidewalks, and before any contract for the building and repairing of the same had been made. The action was tried by the court without a jury; questions of fact found; conclusions of law made, and judgment rendered in favor of the defendants. Since the action was brought to this court the plaintiff in error has died, and the cause has been revived in the names of his heirs.

A summary from the findings of fact, which are voluminous, is as follows: The city of South Topeka was organized July 15, 1885, as a city of the third class; on June 4, 1886, by proclamation of the governor, it was declared a city of the second class. Nothing was done, however, to perfect its organization as a city of the second class until July 28th following, when the city council passed an ordinance dividing the city into four wards, and another ordinance ordering an election for three additional members of the city council. The election was held on the 9th of August following; on the 12th of the same month the vote was canvassed. On the last-named day, before the canvassing of the vote, an ordinance levying general taxes was passed by a vote of four members of the old council, all that were present. It is this ordinance that the plaintiff claims to be illegal. As a city of the third class, the council consisted of five members; as a city of the second class, eight. It is necessary in order to enact any ordinance, that a majority of the city council shall vote in favor of its passage. The four councilmen who were present were members of the council of the city when it was a city of the third class, and also as a city of the second class. If the city was acting under its incorporation as a city of the third class, then a majority of the councilmen voted in favor of this ordinance; if it was acting as a city of the second

class, then there was not a sufficient number voting for its passage to constitute it a valid ordinance.

What was the status of the city of South Topeka at this time? It was declared to be a city of the second class by the governor's proclamation of June 4, 1886, but its municipal government was not fully organized until some time after that date. In *Campbell v. Braden*, 31 Kas. 754, this court suggests that it necessarily requires time for such organization to be completed, and in this case we cannot say there was an unreasonable delay. It would not be completed until its officers, including the councilmen, were elected; the proper evidence of their election would be the canvass of the vote by the proper authorities. This was not done at the time of the levying of this tax, and therefore the city of South Topeka at that time was acting, so far as its officers were concerned, as a city of the third class. It is necessary that there should be some city government at all times, and the mere proclamation of the governor changing the form of the city from a city of the third to a city of the second class, did not leave the city without a city government, and of necessity, until the officers of the city as a city of the second class qualified as such officers, the old form of government and the old officers would continue. We think that the ordinance complained of was valid.

1. City—change of class—officers.

The objections to the sidewalk assessment are numerous; we shall notice only those that apparently have a substantial basis to rest upon. The ordinances authorizing the sidewalks were passed at different times; a part in April and May before the city was declared to be a city of the second class, but the estimates were not made nor the taxes levied until the organization of the city as a city of the second class was fully completed.

It is claimed because there was no saving clause in the statute authorizing ordinances of a city of the third class to remain and form a part of the laws of cities of the second class, after it should be incorporated as a city of the second class, that all of the ordinances passed

2. Ordinances, not repealed.

and enacted by the city government as a city of the third class were abrogated by the adoption of a new form of city government. This is not the law. It is still the same city, embracing the same territory, and is a government of the same people. There was a change to be sure, but it was simply a change of the form of the government of the city, intended for the future, and it left unchanged and unaffected the ordinances of the city. Were it not so, the new city organization would have been without a law until the city council of a city of the second class could have been elected, qualified, new ordinances enacted, published, and a new system been put in force. (*Trustees v. City of Erie*, 31 Pa. St. 515; *City of Grand Rapids v. Hydraulic Co.*, 33 N. W. Rep. 749.)

A more serious question to be considered is whether there was such a description of the lots and lands, against which the sidewalks were placed, as would authorize the imposition of the sidewalk assessment. The land owned by the plaintiff is described on the tax-rolls as the "northeast quarter of section six, township twelve, and range sixteen, except such as has been sold; these tracts already described in this book — assessment rolls — pages two to eighty inclusive, as belonging to other parties and containing eighty acres more or less." Such description was given to the assessor by the plaintiff himself. The explanation of that description is set forth in finding number twenty of the court:

"The interpretation of the above description is as follows: The assessor assessed by metes and bounds certain tracts in the above-described quarter-section, which had been sold by plaintiff as lots or parcels corresponding to city lots as hereinbefore mentioned, and also certain parcels as so many acres or parts of acres, and placed said tracts on said assessment roll, on the pages from 2 to 80 inclusive, and deducted the aggregate quantity of said tracts so assessed from the 160 acres constituting plaintiff's original quarter-section, which left the eighty-four acres as above described."

In November, 1886, a notice in writing was served upon plaintiff, by the street commissioner of South Topeka, notifying him that certain sidewalks abutting on certain lands

claimed by plaintiff were out of repair, designating them by streets and numbers of lots, and also that the other sidwalks which were required to be built, specifying the lots in front of which they were to be constructed. It is contended that this is not a sufficient description of the lots to authorize a tax to be imposed upon them. The streets upon which they were to be built were all public streets as named in finding eighteen, which was as follows:

"Kansas avenue, Quincy street, Monroe street, Eleventh, Twelfth, Thirteenth, Fourteenth and Fifteenth streets, extended or prolonged or opened upon, over or through plaintiff's said tract, as hereinbefore stated, have been dedicated by plaintiff to public use."

This land, however, has never been legally platted by plaintiff, but he did employ a surveyor in 1864 or 1865, who made a plat of a part of the quarter-section; said surveyor divided said tract into blocks of 450 feet in length, north and south, and 320 feet in width, east and west; left an alley 20 feet wide through the middle of each block, and made the lots 25 feet wide and 150 feet in length; he also left spaces for streets. Said plat was never acknowledged or filed for record. These 25-feet lots were commonly known and described by numbers upon the streets on which they are situated; such numbers were given upon the theory that the streets were extensions of the streets of the same name of the city of Topeka proper. The plaintiff did from time to time sell lots in said quarter-section, of 150 feet in length and 25 feet, or some multiple thereof, in width. In the deeds given by him to said lots or tracts, the plaintiff has commenced his description thereof by commencing at a point in the city of Topeka proper, thence extending on the north or south side of a designated street or avenue, as the case might be. In some of his conveyances he added such descriptions as would correspond with numbers, according to the plat of the city of Topeka extended upon his quarter-section. In making such conveyances he left spaces for the streets. Public money has been expended for the improvement of the streets, the putting in of crossings, the lay-

ing down of sidewalks, and his property has been enhanced by such expenditures. He was mayor of the city of South Topeka in 1885, and as such signed an ordinance authorizing the construction of sidewalks, and signed the warrants given in payment therefor, and personally supervised the erection of crossings, and the laying down of sidewalks. There is no question about the land being a part of the city of South Topeka.

It is not claimed that any tax is charged against him for sidewalks that do not abut upon his own land; the contention is that the description of such property is not sufficiently definite. He was living in and had been mayor of the city

3. Mayor—building sidewalks.

where the property was situated; he had dedicated to the public use the streets upon which these different pieces of property fronted; he had put down sidewalks and put in crossings in these streets; he had prepared a plat more than twenty years ago, but had never filed it, but had sold tracts with the reference to the lots and streets named in said plat, and the lots were commonly known by the number under which they were assessed. We are not prepared to say they were not sufficiently described, even though the plaintiff had not filed the plat of the land in the office of the register of deeds. But could the plaintiff in this action complain of any irregularity in levying the taxes or the assessment of the property? He stood silently by and saw the old sidewalk repaired and all the new ones built, before he made any complaint. He knew of the city ordinances, and without objection permitted the expenditure of large sums of the public money; saw his property benefited and enhanced in value by the building of long lines of sidewalk in front of his property fronting these streets, and after all the work had

4. Sidewalk tax—collection, when not restrained.

been completed he complains of irregularities in order to defeat the collection of taxes to pay in part for these improvements. If he wished to test this question, he should have done so before the work was finished. He ought not to be allowed to do it now.

We recommend that the judgment of the court below be affirmed.

By the Court: It is so ordered.

All the Justices concurring.