[No. 4941.    Decided April 11, 1904.]

## C. P. FERRY et al., Respondents, v. CITY OF TACOMA et al., Appellants.[1]

MUNICIPAL CORPORATIONS — ASSESSMENTS FOR LOCAL IMPROVE-
MENTS—RESTRICTION TO FIFTY PER CENT OF ASSESSED VALUE—CON-
STRUCTION OF CHARTER PROVISIONS. The provision in the city char-
ter and ordinances of Tacoma, p. 77, § 137, that no local improve-
ment shall be made when the estimated cost thereof shall exceed
fifty per cent of the assessed value of the property to be assessed,
refers to the total assessed value of the property in the district
as assessed for general taxation, and does not invalidate an as-
sessment against particular lots because in excess of fifty per
cent of the assessed valuation of such lots; since there is no
preliminary provision for an appraisement of values, and the
other provisions of the charter show that the estimated cost
and the assessed value referred to are known and considered
before the amount charged against any particular lot could be
ascertained; and since the charge for local improvements is not
based on said assigned value, but upon the accruing benefits to
the particular lots.

SAME—ESTOPPEL OF PROPERTY OWNERS—OBJECTIONS TO BE MADE
BEFORE CITY COUNCIL. Where property owners fail after notice
to appear before the city council and object to local assessments,
they are estopped to question the regularity of the assessment,
if the total cost of the improvement was within the fifty per
cent value of all the property to be assessed.

Appeal from a judgment of the superior court for
Pierce county, Chapman, J., entered September 12, 1903,
in favor of plaintiffs, upon overruling a demurrer to the
complaint. Reversed.

*Emmett N. Parker* and *William P. Reynolds,* for appel-
lants.

*E. R. York,* for respondents.

[1]Reported in 76 Pac. 277.

MOUNT, J.—This action was brought by the plaintiffs to restrain the defendants from proceeding to enforce a special assessment against certain real estate, for street improvements in front of said real estate, in the city of Tacoma, upon the ground that such assessment was unauthorized and void. The defendants filed a general demurrer to the complaint. This demurrer was denied, and defendants elected to stand thereon, and judgment was entered in favor of the plaintiffs. Defendants appeal.

In substance the complaint states, that the plaintiffs are the owners of certain lots in the city of Tacoma; that in July, 1902, the said city instituted proceedings for the improvement of South O street, from the center line of South Fifteenth street to the north boundary of C. P. Ferry's addition, by grading, curbing, guttering, and sidewalking said street, the cost thereof to be charged against the abutting property; that the estimated cost of the improvements was $2,933; that notice was duly given, and no protests against such improvements were filed; that subsequently, on October 17, 1902, an ordinance was regularly passed, providing for the said improvement, and the payment of the cost thereof by special assessment of the property benefitted; that, pursuant to said ordinance, the improvements were duly made at a cost of $2,929, and an assessment roll was made, apportioning and charging the expenses of such improvements against the several lots subject thereto; that notice of the filing of said roll was duly given, and no protests were made against the same; that subsequently an ordinance was duly passed, confirming the said assessment roll, and providing for the disbursement of the money collected upon such assessment. Thereupon said roll was placed in the hands of the city treasurer for collection. The complaint

then states the amounts assessed against each of the plaintiffs' lots, and the location of said lots, and alleges as follows:

"(8) That at all the times herein mentioned the city charter of said city under and pursuant to the authority of which said improvement was made, provided in § 137 as follows: 'That no improvement shall be made when the estimated cost thereof shall exceed fifty per cent of the assessed value of the property to be assessed.' And also provides in § 160 as follows: 'That in no case shall the cost of any improvement authorized by the city council to be done exceed the estimated cost of the city engineer.' And also provides in § 138 as follows: 'Any lot or parcel of land lying directly and lengthwise along the line of improvement at any street corner or intersection shall be assessed one-half of the amount as determined by its frontage, and the remaining one-half assessed upon the lots to the center of the block.'

"(9) That in and by the said general assessment of said lots for the purpose of city and county taxation prior to said special assessment for improvement of South O street, being the assessment made in and for the year 1902, the said lots 11 and 12 in block 1329 and said lot 11 in block 1529 were each and all severally assessed at the sum of $130 and no more, and pursuant to said general assessment of each of said lots at the sum of $130 and the provisions of the city charter the said lots and each of them in this paragraph mentioned were not lawfully subject to said special assessment or lawfully chargeable with the cost or expense for the improvement of said South O street in an amount to exceed the sum of $65 per lot, and said assessment as charged upon each of said lots in the sum of $118.70 is grossly excessive, unjust, illegal, unauthorized and void, and beyond the power or jurisdiction of the said city and is greatly beyond the fair, reasonable, or actual value or benefit of said lots by reason of said improvement having been made, and said special assessment for said improvement as made and charged upon said lots was and is wholly beyond

the power or jurisdiction of said city to make, unauthorized, illegal and void.

"(10) That the estimated cost of said improvement chargeable to each of said lots 11 and 12 in block 1329 and lot 11 in block 1529, under the estimate and diagram made by the city engineer of said city in the aggregate sum of $2,933, was and is substantially the identical amount subsequently and actually charged for said improvement upon said special assessment roll in the aggregate sum of $2,929, to wit, the sum of $118.70 per lot, and said amount is in excess of the amount lawfully chargeable for said improvements upon each of said lots under the provisions of the city charter of said city in the sum of $53.70 per lot.

"(11) That the said special assessment, so unlawfully charged againsts plaintiffs' said lots, is an apparent lien and charge thereon and is a cloud upon their title to said property and very materially damages and reduces the value and prevents any sale of said property, and the defendants are proceeding and about to enforce said assessment against said property and will, unless said assessment be set aside and cancelled and the defendants restrained therefrom, offer said property for sale and sell said property for said assessment, penalty, interest, and costs upon said assessment becoming delinquent, whereby plaintiffs will be greatly and irreparably damaged, and plaintiffs have no other or sufficient or adequate remedy in the premises."

Then follows the prayer.

No question is made here against the regularity of the proceedings, but it is contended by the respondents, and was so held by the lower court, that the amount of the assessment was beyond the power of the city, by reason of the fact that the assessment against each of respondents' lots was more than fifty per cent of the assessed value of such lot. The city charter of the city, after pro-

viding the manner in which street improvements may be made, and for assessments for such improvements, provides:

"That no improvement shall be made when the estimated cost thereof shall exceed fifty per cent of the assessed value of the property to be assessed." § 137, p. 77, Charter and Ordinances of Tacoma.

The complaint shows that the improvements and assessment proceedings were regular, that due notice was given and no objection made thereto, and that respondents' lots were each charged with more than fifty per cent of their valuation; but it is not shown, nor is it claimed, that the total or estimated cost of the improvement was more than fifty per cent of the total assessed valuation of the whole property to be assessed. The case turns upon the construction of the charter provision above quoted.

This provision was inserted no doubt for the purpose of placing a limitation upon the power of the city to make street improvements. By this limitation, the city may not make an improvement the cost of which exceeds fifty per cent of the assessed valuation of the property to be assessed for such improvement. · Appellants insist that the word "property" must be held to mean all the property in the assessment district, while respondents insist that it must be held to mean each parcel of property. The section is susceptible of either construction, and good reasons may be advanced therefor. But, when the whole chapter is considered, we think there can be little, if any, doubt that the provision refers clearly to the whole of the property in the district, as contended for by appellants.

Art. 12 of the charter relates to "street improvements." The first section of this article is numbered 135. That section provides that applications for street improvements must be made to the commissioner of public works, and shall be signed by the owners of more than one-half of

the property abutting upon the street sought to be improved, but that the city council by a two-thirds vote may, without petition, order an improvement. Section 136 provides that, upon the passage of a resolution by the council for any improvement, the commissioner of public works shall cause the city engineer to prepare a survey, diagram, and estimate of the entire cost of such improvement, which diagram and estimate shall be filed in the office of the said commissioner, and notice thereof shall be given by publication; which notice shall contain, among other things, a specification of the street to be improved, the kind of improvements, the estimated cost thereof, and a general description of the property to be charged with the improvements. Then follows a provision for remonstrance by property owners interested. The next section in full is as follows:

"§ 137. If no remonstrance be made and filed as provided in the last preceding section, then the owners of the lots and parcels of land described in said notice shall be deemed to have consented to such improvements; or, if such remonstrance has been made and filed, and the city council has ordered such work to be done, or improvement to be made, the expense thereof shall be charged to the property described in said notice in the manner as hereinafter provided, and the commissioner of public works shall at his earliest convenience, and within six months thereafter, establish the proposed grade or make the proposed improvement; *provided, that no improvement shall be made when the estimated cost thereof shall exceed fifty per cent of the assessed value of the property to be assessed.*"

The chapter continues and points out how the costs of the improvements shall be assessed against the property, the form of the assessment roll, and the notice thereof, and the manner of collection, etc. There is no provision for an appraisement of the value of the property. It will

42-34 WASH.

be seen that the provisions of § 137 and preceding sections are preliminary to the proposed improvements. The estimated cost of the improvements, and the "assessed value" of the property, are known before the improvements are ordered. The improvements are ordered before the expense thereof is assessed against the separate parcels or lots of land. It is not reasonable to suppose that the charter intended that an improvement might be ordered which would become invalid by reason of the fact that an assessment against one of the lots should amount to more than fifty per cent of the assessed value.

Furthermore, the assessment against the different lots for the cost of the improvements is not based upon the "assessed value." This value has nothing whatever to do in determining the amount each lot must pay toward the cost of such improvements. These costs are apportioned according to benefits for the size of the lots. The office of the assessed value is only to determine whether or not the estimated cost is within the fifty per cent limitation. The term "assessed value" evidently refers, as alleged in the complaint, to the value of the property as assessed for general taxation, next prior to the time the improvements are ordered. When the estimated cost of the whole improvement is seen to be within the fifty per cent of the assessed value of the whole property to be assessed, the city council are authorized to make the improvement. This, it seems, is the logical construction, and the one intended by the charter. The ordinary and usual construction of the words used also indicates that "the property to be assessed" means the whole property.

Appellants also argue that respondents are now estopped to question the assessment, for the reason that respondents did not avail themselves of the provisions of the act of

1901, Laws of 1901, p. 240. This court has frequently held that, where a city is authorized to make improvements, and where notice is given to property owners, as required by law, and these property owners do not appear in the tribunal provided for that purpose, they are estopped to question the regularity of the assessment. *McNamee v. Tacoma,* 24 Wash. 591, 64 Pac. 791; *Annie Wright Seminary v. Tacoma,* 23 Wash. 109, 62 Pac. 444; *Potter v. Whatcom,* 25 Wash. 207, 65 Pac. 197. Respondents apparently concede this general rule, but contend that the city is without jurisdiction when the assessment exceeds fifty per cent of the assessed value of the separate lots. We have seen above that this limitation does not apply to individual lots, and, therefore, when it appears that the total cost of the improvement is within the fifty per cent value of all the property to be assessed, the city is acting within its authority.

The judgment of the lower court is therefore reversed, with instructions to sustain the demurrer.

FULLERTON, C. J., and HADLEY and DUNBAR, JJ., concur.