## CITY OF BARTLESVILLE *et al.* v. HOLM *et al.*

No. 5432.    Opinion Filed January 13, 1914.

Rehearing Denied March 10, 1914.

(139 Pac. 273.)

**MUNICIPAL CORPORATIONS** — Paving Assessment—Injunction—Estoppel. Where jurisdiction is conferred upon a municipal body to provide for paving its streets and charge the cost thereof against the property benefited, according to the method provided by law, a property owner who stands by while such work is being prosecuted, with full knowledge that large expenditures are being made for such improvement which will benefit his property, or, upon due notice, fails to appear at the proper time and before the tribunal prescribed by law, and present his objections, if he have any, will not, after the work is completed, be afforded relief by injunction against assessments levied against the property benefited to pay for such work.

(Syllabus by the Court.)

*Error from District Court, Washington County;*
*R. H. Hudson, Judge.*

Suit by H. J. Holm and others against the City of Bartlesville and others to enjoin collection of special assessment. Judgment for plaintiffs, and defendants bring error. Reversed and remanded.

*M. D. Libby,* for plaintiffs in error.

*Leahy & MacDonald,* for defendants in error.

KANE, J.   This was a suit in equity, commenced by the defendants in error, plaintiffs below, against the plaintiffs in error, defendants below, to enjoin the collection of a certain special assessment for street paving purposes, levied against the property of the plaintiffs in the city of Bartlesville. Upon trial to the court, the relief prayed for was granted, to reverse which action this proceeding in error was commenced.

The specific ground of complaint on the part of the property owners is that the mayor and council of the city did not take the necessary steps, or do the things necessary, to confer juris-

diction upon the municipal authorities to make the assessment herein complained of, in that, after a time was appointed for holding a session of the city council, and a day and hour fixed to hear any complaints or objections that the property owners may have had concerning the appraisement and apportionment of the lots or tracts of lands involved in the improvement, and the publishing of notice of such session as required by section 726, Comp. Laws 1909 (Rev. Laws 1910, secs. 626-639), said mayor and city council proceeded with said public improvement without giving said property owners an opportunity to present their objections on the day fixed by them to hear such complaints or objections. The records of the city in that regard show: That the time fixed in the resolution providing for a hearing was Monday, the 18th day of January, 1909, at 8 o'clock p. m. at the city hall. That on the said 18th day of January, 1909, the following entry was made:

"This being the date for the regular meeting of the council of the city of Bartlesville, and there being no quorum, it was moved and seconded that the council adjourn to Monday, January 25th. Carried."

That on said 25th day of January, 1909, the following entry was made:

"Adjourned meeting of the council of the city of Bartlesville met at the city hall. * * * Moved and seconded that the council adjourn to January 26th. Carried."

That on said 26th day of January, 1909, the following was made:

"This being the date for an adjourned meeting of the council of the city of Bartlesville, and there being no quorum, it was moved and seconded that the council adjourn to January 28, 1909. Carried."

That on said January 28, 1909, a resolution was passed by said council wherein, after detailing the proceedings of the council in relation to said improvement, the following appears:

"And whereas, at the time mentioned in said notice by the city clerk, to wit, January 18, 1909, quorum of the council failed to appear, and said meeting was then and there adjourned to this date; and whereas, the council has reviewed, revised, and corrected the said appraisement and apportionment, and the same

as it now stands is correct, equitable, and just, and is in accordance with the laws governing such appraisement and apportionment: Now, therefore, be it resolved, by the mayor and councilmen that the said report of the said board of appraisers, as corrected and revised by the council, and said appraisement and apportionment of the cost of said improvements be and the same hereby is adopted, ratified, and confirmed."

Counsel for the defendants states his contentions as follows:

"There are two principal questions arising upon this record, one of which is: Were the proceedings of the mayor and council touching the hearing as to complaints and objections which might be made concerning the appraisement and apportionment such as that the mayor and council proceeded without jurisdiction to pass the assessing ordinance? and the other of which is: Are not the plaintiffs below estopped and precluded by their acts from now contesting the validity of the assessment, even though the ordinance levying the assessment be absolutely void for want of jurisdiction, and have they not waived their right so to do by their acts?"

Counsel for the property owners insist that the questions which naturally arise out of the first principal proposition stated by counsel for the defendants have been settled by this court in the case of *Morrow v. Barber Asphalt Paving Co.,* 27 Okla. 247, 111 Pac. 198, wherein it was held:

"Where the mayor and city council fail to meet to hear and adjust any complaint and review such assessment at the meeting called pursuant to the notice required by Wilson's Rev. & Ann. St. sec. 449, such assessment is void. The period of limitation by statute (Wilson's Rev. & Ann. St. sec. 450) within which an action may be brought to set aside a special assessment made against the lots abutting upon a street to pay the cost of grading the same does not apply to bar a lot owner of an action to enjoin collection of such assessment, when the proceedings upon which it is based are void."

The two cases are not exactly analogous. In the Morrow case the city authorities, after giving the preliminary notice, proceeded without taking any action upon the property owners' protest which was on file; whilst in the case at bar the property owners filed no complaints or objections, nor did they in any way indicate that they were in any way dissatisfied with the proceedings until they filed this suit in equity, long after the work

had been completed. Moreover, the doctrine of laches was not discussed in the Morrow case, and probably would not apply to it on account of the protest of the property owners which was filed in due time and disregarded. There is authority to the effect that, where the property owner has given due notice of his intention to resist the assessment, he will be entitled to equitable relief, although he does not institute a suit to enjoin until after the completion of the work. *Keys v. City of Neodesha,* 64 Kan. 681, 68 Pac. 625; *Edwards v. Cooper,* 168 Ind. 54, 79 N. E. 1047.

In the case at bar the court below, after reciting the facts in relation to the proceedings of the city council, as hereinbefore set out, further found, in effect: That thereafter such other and further proceedings were had by said mayor and city council relating to the making of said improvement, and in conformity with the statutes in such cases made and provided, as that a contract was let by the mayor and council for the making of said improvement, and the costs thereof ascertained, and which resulted in the issuance by said city of a series of street improvement bonds in the aggregate amount of $29,556 in payment of such improvements. That the defendant Foster purchased said bonds, and paid therefor, without notice, knowledge, or information that the plaintiffs had any complaint or objection concerning the said appraisement and apportionment of benefits of the said improvements to said property, or to said assessment, until after the property owners had paid one or more of the installments of such assessment. That at the session of the council so appointed for the said 18th day of January, 1909, neither the said plaintiffs, nor any of them, nor any other persons, appeared for the purpose of making any complaints or objections concerning the said appraisement and appointment, nor did at any time or place make any complaints or objections concerning said appraisement and apportionment, prior to the commencement of this action. That said plaintiffs did not, nor did either of them, within 60 days after the passage and publication of the ordinance levying such final assessment, bring suit to set aside such assessment, or to enjoin the levying or collecting of such assessment, or to contest the validity thereof, upon any ground, or for any reason, or

at all. That this action was commenced on the 28th day of September, 1912. That the plaintiffs, and each of them, had knowledge and notice of the said resolution passed by the mayor and council of said city on the 28th day of September, 1908, declaring such work of improvement necessary to be done, and had knowledge and notice of the passage of said resolution of October 23, 1908, expressing the determination of the mayor and council of said city to proceed with the said improvement, and had full knowledge and notice of the making of the said contract by and between the said city of Bartlesville and the contractors for constructing said improvement, and did know and understand from the time of the passage of the said resolution on the 28th day of September, 1908, that the cost of the improvement in said resolution and contract mentioned would be paid for by special assessments levied upon the lots and tracts of land fronting and abutting upon said improvement, and that such assessment would thereby become a lien upon plaintiff's said property and other property in said paving district, and had information and notice of the commencement of said work, of improvement by the said contractors, and of the progress and completion and acceptance thereof, and of the intended issuance of bonds by said city in the amount of $29,566 in payment of said work of improvement, and did permit said work to be done, and large sums of money, to wit, the amount of $29,566, to be expended in excavating, grading, curbing, guttering, draining, and paving said portion of said Johnstone avenue under said contract, and issuance of said bonds, without making objection to the said council concerning said appraisement and apportionment, and without seeking to prevent the issuance of said bonds, though none of them were issued until the latter part of the month of July, 1909, when some of them were issued, and the residue on the completion and acceptance of said work of improvement in the month of November, 1909. There is a growing tendency on the part of the courts to require prompt action on the part of the property owner in interposing objections, so that they may be made in time to enable the municipality to correct any defects in the proceedings under which public improve-

ments are being made. Failure in this regard is sometimes referred to as estoppel, sometimes as waiver, and sometimes as laches; but, by whatever name it is known, or on whatever theory it is explained, it is generally held that, if the delay is unreasonable, and during such delay the other party has in good faith changed his position so that he would be injured by such delay, if the relief which is sought were to be given, such delay amounts to laches, and precludes relief, even if the circumstances were such that relief should have been given, had application been made promptly. This court on several occasions has applied the doctrine of laches to cases involving assessments for public improvements. *City of Perry v. Davis et al.,* 18 Okla. 458, 90 Pac. 865; *Kerker v. Bocher,* 20 Okla. 729, 95 Pac. 981; *Paulsen v. City of El Reno,* 22 Okla. 734, 98 Pac. 958; *Jenkins v. Oklahoma City et al.,* 27 Okla. 230, 111 Pac. 941; *Lonsinger v. Ponca City,* 27 Okla. 397, 112 Pac. 1006; *Weaver v. City of Chickasha,* 36 Okla. 226, 128 Pac. 305; *Shultz v. Ritterbusch,* 38 Okla. 478, 134 Pac. 961.

In the former case Mr. Justice Garber, in delivering the opinion of the court, says:

"The evidence discloses that the defendants in error stood by without objection or protest when the construction of the sewer adjacent to their property was in progress. Equity does not look with favor upon their silent and approving acquiescence in the performance of labor and expenditure of money enhancing the value of their properties when contrasted with their belligerent and warlike attitude exhibited for the first time after the full completion of the work. It was the plain duty of the defendants in error, upon the publication of the ordinance creating the sewer district, or when they discovered that labor and money was being expended in the actual construction of the sewer, to vigorously object and protest against it; then was an opportune time to test by injunction or other proceedings the legality of the various steps being taken, but no objection was made, no protest was filed, and not a single murmur was heard in the sewer district from that November morning when Contractor Plummer and his workmen, with their picks and shovels and spades, went out to improve the sanitary conditions of the district in which all the defendants in error were resident property holders to the evening when the entire work was completed according to con-

tract, approved by the city engineer, and accepted by the city. It was not until after the completion of the work, and when these defendants were called upon to pay their respective assessments for benefits received, that it occurred to them that an injunction proceeding was a necessary and proper remedy to invoke. Under such circumstances both the law and equity look with approval upon the payment of such assessments, especially when made for a public work of this character."

In the case of *Kerker v. Bocher, supra,* on the same subject Mr. Chief Justice Williams says:

"Every person, as a member of a municipal community thereby enjoying the incident benefits, takes notice of the accompanying obligations. Streets are to be laid out, graded, paved, and lighted. The constabulary must be maintained to enforce peace and preserve order. Sewerage systems and water supplies must be provided. No one is entitled to enjoy these advantages, and to be permitted to successfully contend that the laws, ordinances, and resolutions under which such benefits and advantages are created, regulated, and controlled are invalid, and thereby escape the resultant burdens. The citizen of the modern municipality and property owner thereof take notice of such necessities. He owes his personal service to maintain order and promote the public good in his municipality, just as he owes to the nation his service to protect against hostile encroachments and invasion. No man can expect to have property in cities, abutting on public thoroughfares and streets, without bearing the burdens of special taxation to maintain grades, build sidewalks, and macadamize and pave the streets; and he acquires his property with the full knowledge of the fact that the legislative power of the state can be exercised to levy and provide for an assessment or special tax for such improvements."

The law of the case is stated in the syllabus as follows:

"Abutting property owners, with knowledge that such paving is being done with the intention of levying a special tax upon them for payment of the same, and permitting such improvement to be done without objection to the council, and knowingly receiving the benefits, when afterwards they seek relief in equity to escape payment therefor, will be deemed to have ratified the same, and estopped from setting up any irregularity, except when it goes to the extent of the jurisdiction."

The great weight of authority leans toward a rather strict and technical application of the doctrine of estoppel, and is to

the effect that, where there is jurisdiction, one who stands idly by while a public work is being prosecuted, with full knowledge, by himself or agent, that large expenditures are being made for such public improvement which will benefit his property, or fails to appear at the proper time and present his objections, will not, after the work is completed, be afforded relief against assessments levied against the property benefited to pay for such work, either in courts of law or equity. *O'Dea v. Mitchell,* 144 Cal. 374, 77 Pac. 1020; *Fair Haven & W. R. Co. v. New Haven,* 77 Conn. 667, 60 Atl. 651; *Taylor v. Patton,* 160 Ind. 4, 66 N. E. 91; *Arnold v. Ft. Dodge,* 111 Iowa, 152, 82 N. W. 495; *Ritchie v. South Topeka,* 38 Kan. 368, 16 Pac. 332; *Atkinson v. Newton,* 169 Mass. 240, 47 N. E. 1029; *Nowlen v. Benton Harbor,* 134 Mich. 401, 96 N. W. 450; *State v. Rutherford,* 52 N. J. Law, 501, 20 Atl. 60; *Corry v. Gaynor,* 22 Ohio St. 584; *Clinton v. Portland,* 26 Ore. 410, 38 Pac. 407; *Ferry v. Tacoma,* 34 Wash. 652, 76 Pac. 277; *State v. La Crosse,* 101 Wis. 208, 77 N. W. 167; *Treat v. Chicago,* 130 Fed. 443, 64 C. C. A. 645; *Shepard v. Barron,* 194 U. S. 553, 24 Sup. Ct. 737, 48 L. Ed. 1115.

There seems to be considerable confusion in the authorities on the question of what constitutes jurisdictional facts. This question is discussed in 1 Elliott, Roads and Streets (3d Ed.) sec. 329; as follows:

"There is a material difference between proceedings void for want of jurisdiction and proceedings erroneous because of a departure from the provisions of the statute or the general rules of law. Much confusion has been produced by employing the word 'void' in a loose sense, and incorrectly assigning it a meaning equivalent to voidable. The truth is sound principle requires that it should be held that no judicial proceeding shall be deemed void where there is jurisdiction of the subject-matter and the person. Such proceedings may be erroneous, and may be avoided by an appeal or some direct attack; but, in a just sense, they are not void. Where there is jurisdiction the judgment of the tribunal is not void, unless it is one which it was clearly beyond the power of the tribunal to render. Jurisdiction does not, however, authorize a judgment clearly and wholly beyond the power of the tribunal, even in courts of superior jurisdiction."

The same author (section 607), further discussing the same question, says:

"* * * We venture to suggest that in some of the cases the courts have erred in pronouncing the proceedings absolutely void, and that in others, where the attack was direct, they erred in doing more than declaring the proceedings to be erroneous. If proceedings are entirely without or beyond the authority of the tribunal, then they are, of course, absolutely void; but, where they are not beyond the scope of the jurisdiction of the court, they are simply voidable."

It is true that whether delay in resisting or enforcing assessment proceedings amounts to laches which will prevent the relief sought depends largely upon the circumstances of each case. 2 Page & Jones on Taxation by Assessment, sec. 1016. The instant case, however, seems to contain all the elements assential for the application of that principle. Indeed, we have found no case—and none has been called to our attention—where the application of the rule has been denied where the statute under consideration was similar to ours, and the facts substantially the same. The preliminary notice fixing the time for hearing complaints and objections was regular in every respect. This gave the property owners notice of the contemplated action of the mayor and city council, and an opportunity to present in due time any complaints or objections they may have had to the validity of the proceedings to the city authorities, or the courts of general jurisdiction. *City of Perry v. Davis et al., supra; Kerker v. Bocher, supra.* The record shows, however, and the court below found, that none of the property owners attempted to file any complaint or objection, or otherwise indicated that they were not entirely satisfied with the action of the city authorities. If they had done so, the members of the city council present at the meeting of the council called for the 18th day of January, 1909, could have secured a quorum for the purpose of hearing such objections and complaints as the parties might present, and probably would have done so. It has been held that, where the statutes contemplate the formal presentation of objections, remonstrances, protests, and the like, at a certain stage of the assessment proceedings, and the property owner fails to make

such formal objection at the stage required by statute,. he is precluded from making such formal objection at a later stage, when the improvements have been completed, the benefits secured to his property, and the assessment levied. *Field v. Barber Asphalt Co.* (C. C.) 117 Fed. 925; *Haughawout v. Raymond,* 148 Cal. 311, 83 Pac. 53; *Duncan v. Ramish,* 142 Cal. 686, 76 Pac. 661; *Wabash Eastern Ry. Co. of Ill. v. Com'rs of E. Lake Fork Special Drainage Dist.,* 134 Ill. 384, 25 N. E. 781, 10 L. R. A. 285. Other cases to the same effect are collected in a note to section 1016 of volume 2, Page & Jones' Taxation by Assessment.

Whilst a great many of the foregoing cases are analogous to the case at bar, the following will probably be found to be more directly in point: *County of Dakota et al. v. Cheney,* 22 Neb. 437, 35 N. W. 211; *Kellogg, Treas., v. Ely,* 15 Ohio St. 64; *Prezinger v. Harness,* 114 Ind. 491, 16 N. E. 495; *McCoy v. Able et al.,* 131 Ind. 417, 30 N. E. 528, 31 N. E. 453; *Board Co. Com'rs Cass Co. et al. v. Plotner,* 149 Ind. 116, 48 N. E. 635; *Atwell v. Barnes,* 109 Mich. 10, 66 N. W. 583; *Moore v. McIntyre,* 110 Mich. 237, 68 N. W. 130.

Certain reflections by Brinkerhoff, C. J., who delivered the opinion in *Kellogg, Treas., v. Ely, supra,* in relation to the duty of property owners in special improvement proceedings, may very well be applied to the property owners in the case at bar:

"We do not find it necessary to determine any one of the many questions made and argued by counsel in the case as to the legality or illegality of the proceedings by which this ditch was established, because, if we take for granted all that the plaintiff below claims in this respect, we are of opinion that he does not make such a case as to entitle him to a remedy by injunction at the hands of a court of equity. It is not for every threatened violation of the legal rights of a party that a court of equity will intervene with its preventive remedy by injunction, even in cases where that remedy would be efficient. A party appealing to a court of equity must make a case which can commend itself to the conscience of the court. How is it with the case before us made by the plaintiff below? It is evident enough that, when the proceedings in the probate court, on inquiry of damages claimed by him, were ended, the plaintiff below might have proceeded on error to test their legality, and, if erroneous, to reverse them. And when the final order establishing the ditch was

made by the county commissioners, he might then have proceeded, on error or by appeal, to question their power and jurisdiction, and to undo what may have been erroneously done. And these remedies, if they had been resorted to, would have had these important recommendations: That whatever had been done erroneously, or without authority of law, would have been set aside; officers would have been instructed as to their duties, and parties as to their rights; and proceedings, recommencing from the erroneous point of departure, would have been carried on in strict conformity to law, with all just interests respected, and all rights conserved. But it does not appear that any resort was had to these remedies. Again: When the different sections of this ditch were let to the lowest bidder, and when the first spade had been thrust into the earth in the execution of the contracts then made, before the contractors had expended any money, or the laborers any sweat, then, if ever, the remedy by injunction was open to the plaintiff below. But he did not invoke it. It does not appear from the record that he ever warned the contractors or laborers that he intended for himself to resist the collection of the assessment which must follow to raise the money to pay them; but, remaining inactive and silent until his swamp lands were drained by a ditch of nearly a mile in length, he then, for the first time, asks the interposition of a court of equity. We think he comes too late."

For the reasons stated, the judgment of the court below is reversed, and the cause remanded, with directions to proceed in conformity with this opinion.

All the Justices concur.