## WEY v. CITY OF HOBART et al.

No. 8031—Opinion Filed July 10, 1917.

Rehearing Denied Nov. 6, 1917.

(168 Pac. 433.)

### 1. Municipal Corporations—Public Improvement—Injunction—Laches.

Where money has been expended by a city for public improvements and a property owner sits silently by and allows the expenditure and improvements to be made with full opportunity to prevent its accomplishments or testing the legality of the ordinance under which said improvements are made and fails to take steps to enjoin the expenditure of said money or construction of said work, it is then too late for him to ask a court of equity to interfere, as the improvements have then been made, the money expended, and the relations of the property and parties have been changed, and he is held to be guilty of laches which will prevent him from avoiding the payment of his part of the costs thereof.

### 2. Same.

It is the duty of the property owner, upon discovering that labor and money are about to be expended in the actual construction of a public work which would tend to benefit his property, to promptly take action, by injunction or otherwise, against the proceedings providing for such improvements, if in his judgment said proceedings are irregular, and he cannot stand by without availing himself of this opportunity while the public work is in progress, and when the work is completed and he is called to pay his respective assessments for the benefits received, then invoke relief by injunction in a court of equity.

(Syllabus by Hooker, C.)

Error from District Court, Kiowa County; Thomas A. Edwards, Judge.

Suit for injunction by Helen G. Wey against the City of Hobart and others. Judgment for defendants, and plaintiff brings error. Affirmed.

Zink & Cline, for plaintiff in error.

J. Garnett Hughes, for defendants in error.

Opinion by HOOKER, C. On August 11, 1914, a petition of ten citizens of the city of Hobart was presented to the mayor and councilmen of said city for the construction of a sidewalk along the east side of the property involved here, which petition was considered by the governing body of said city at that time, and a resolution adopted deeming the construction of the sidewalk necessary, and ordering the same constructed as prayed for, and thereupon the street commissioner of said city was directed to serve written notice of the action of said council upon the owners of the property as provided by ordinance. The governing body of the city of Hobart was the judge of the necessity for the construction of said sidewalk, and the same is not subject to review here.

The ordinance of said city under which the sidewalk in question was constructed, among other things provides:

"That upon the filing of a petition·signed by ten or more citizens with the councilmen praying for the construction of a sidewalk, * * * the council, if in their judgment the same shall be necessary, shall order the same to be built."

And section 4 thereof provides:

"That when the council shall have ordered any sidewalk to be built or repaired as provided in sections 3 and 4 of the ordinance * * * the street commissioner shall serve a written or printed, or partly printed and partly written, notice of the action of the council in making such order upon the owners or agent of each and every abutting upon such sidewalk, said notice shall descri'e such lot by its block and number, and shall notify him of the cost of such sidewalk; that the council has ordered the same to be built or the cost of building it turned over to the street commissioner within ten days from the service of such notice or tax warrant for the actual labor and material to be used to which will be added the cost of publication will be issued and shall put a special assessment·against such lot. Such notice shall be served by delivering a copy thereof to the owner or agent or by leaving at the residence of such owner or agent with some person of twelve years of age or over and informing such person of the contests thereof. If no owner or agent be found. service may be made by publication of said notice for four weeks in a paper of general circulation in said city. The street commissioner shall make a return of such notice showing the person upon whom service was made and the manner of service and file the same in the office of the city clerk. * * * "

And section 6 thereof provides:

"If any such owner or agent of such lot shall fail to construct any such walk or place the amount required in the hands of the street commissioner within ten days after the service of such notice, the street commissioner shall report such fact to the council, whereupon the council shall contract with some person or persons to construct such sidewalk at a cost not excluding the actual cost of labor and material at the market price, used, which shall not be more than the amount stated in the notice, and issue a tax warrant against such lot for such mount to pay the same: Provided, such person or persons accept for constructing the same a tax warrant against such lot without said city becoming liable for the amount or any part thereof, and provided that said construction be under the supervision of the street commissioner."

This court in the case of Strahan v. Town of Ft. Gibson, 44 Okla. 79, 143 Pac. 674, said:

"Where the authority of a board of trustees to order the construction of street intersections depends upon the filing of a petition by ten or more citizens, the filing of such petition is jurisdictional, and the want of the filing of such petition makes the whole proceeding void."

Under the ordinance involved in this action, the filing of a petition as was done here by the ten citizens named therein, conferred upon the city of Hobart the authority to order the sidewalk in question constructed in the manner and form as provided by said ordinance.

The street commissioners of the city of Hobart in executing the notice provided for by the section of the ordinance above quoted, directed the same to one A. B. Wey, as the owner of the property involved here, and executed the same by delivering a copy to the plaintiff in error, Helen G. Wey, the wife of A. B. Wey, she being a member of the family of A.·B. Wey over 12 years of age. The proof here discloses that Helen G. Wey was the owner of the property at the time the sidewalk in question was ordered constructed, and that she immediately, after the council ordered the construction of said sidewalk, had actual knowledge thereof, and had also had actual knowledge of the contents of said notice. Upon the failure of the owner of this property to construct the sidewalk as provided by the ordinance, a con-

tract was let by the city to P. E. Wheeler, a contractor, to construct the same, and the said Wheeler thereupon made preparation to build said sidewalk and did build the same but, before doing so, the plaintiff in error, Helen G. Wey, objected to him and notified him that she was not willing for said sidewalk to be constructed, and that if he did, it was over her protest and objection, and he would have to look to someone else for his pay, but the plaintiff in error did not seek to enjoin the construction of this sidewalk, but waited until the same was placed upon her property so that it was impossible to remove the same. And before the proceedings could be had by the governing body of the municipality to make the same a lien upon her property, she sought by injunction to prevent the levy and collection of the special tax, and urges two reasons why the same is illegal. First, that no notice was served upon her, as provided by the ordinance; second, that the contract was not let at the time and manner provided for in the advertisement, inasmuch as the governing body of said city had advertised that a contract would be let on a certain day for the construction of this work, and that the same was not let until another date, on which date the governing body of said city had let the same at a higher rate than the actual cost necessary therefor.

It cannot be doubted from the record here that before the construction of the sidewalk the plaintiff in error had full knowledge of the contents of this notice, which was delivered to her for her husband as the supposed owner of the property in question, inasmuch as after the delivery of this notice to her she acted thereupon by protesting and objecting to the supposed contractor against the construction of the sidewalk. The Supreme Court of Massachusetts in Beals et al. v. James et al., 173 Mass. 594, 54 N. E. 245, said:

"Although the notice was directed to the heirs of the estate, it was received by Beals, and he was the person who should have received it. He received it in time to appeal to the jury, and he had substantially the same notice and knowledge of the assessment as he would have had if the notice had been directed to him as trustee. He suffered no injury in this respect."

And in Lawrence v. Nahant, 136 Mass. 477, it is said:

"The acts done were within the limits of a town way, which the plaintiff contends was not legally laid out, because no sufficient notice of the intention of the selectmen to lay it out had been given to him. It is evident from the facts found in the report that the plaintiff had substantially the same notice and knowledge of the intention of the selectmen to lay out the way that he would have had if the notice he received had been addressed to him, and the selectmen had known that he was the owner of the land. When notice is delivered to the owner in person, it cannot be necessary to post up a notice. The plaintiff could not, under the facts stated, by a writ of certiorari quash the order laying out the way. If the plaintiff has suffered any injury by the laying out, it has been caused by his own neglect, and he ought not to derive advantage from concealing or not disclosing his title. * * * Brown v. County Commissioners, 12 Metc. [Mass.] 208; Pickford v. Mayor * * * 98 Mass. 491. * * * It is not shown that the laying out was void ab initio."

It must be borne in mind that the governing body of the city of Hobart acquired jurisdiction to order the sidewalk in question constructed by the filing of the petition by the ten citizens as provided by ordinance, and that, the plaintiff in error had all the knowledge and notice that she would have acquired had the notice been addressed to her instead of to her husband. It might be urged that the plaintiff in error, having acted under the notice which she received by objecting to the construction of the sidewalk, waived the service of a notice addressed to her, yet, under the view we take of this case it is unnecessary to decide the question whether the service of the notice as made, was good. The facts here show that the plaintiff in error did not attempt to enjoin the performance of this work until the sidewalk had been constructed, and her property had received the benefits that naturally accrued to it, and then she immediately sought to avoid the payment of it by preventing the costs thereof becoming a lien thereon. Can she do this? We think not.

This court, in the case of the City of Coalgate v. Gentilini, 51 Okla. 552, 152 Pac. 95, said:

"The legality of the proceedings under the ordinance could have been challenged in a court of competent jurisdiction before any outlay was made, and before there was any change in the conditions or relations of the property or the parties. But this was not done. And since the defendant in error took advantage of none of the means at its hand to prevent this outlay of money for public improvements tending to benefit his property, can he now in a court of equity be heard to say that, since he has the improvements, he will not pay the price? We think not. Equity aids only the diligent: and in Speidel v. Henrici. 120 U. S. 377, 387, Sup. Ct. 610, 612, 30 L. Ed. 718, Mr. Justice

Gray, in speaking of the functions of a court of equity, says: 'Nothing can call forth this court into activity but conscience, good faith and reasonable diligence. Where these are wanting, the court is passive, and does nothing. Laches and neglect are always discountenanced.'"

And this court says further in said opinion:

"Assuming, without deciding, in the case at bar, that the defendant in error might have prevented the outlay of public money for the improvements complained of, and that there were gross irregularities in the proceedings of the council, yet, since he sat silently by, and allowed these expenditures and public improvements to be made, with full opportunity to prevent its accomplishment, yet without taking legal steps to prevent the consummation of the alleged wrong he cannot, after the relations of property and parties have been changed, ask a court of equity to relieve against that which his own laches has permitted to be done. This has been consistently held in every case of this character that this court has passed upon. In the City of Perry v. Davis et al., 18 Okla. 427, 90 Pac. 865, Mr. Justice Garner, speaking for the court upon this question, says: 'It was the plain duty of the defendants in error, upon the publication of the ordinance creating the sewer district, or when they discovered that labor and money were being expended in the actual construction of the sewer, to vigorously object and protest against it. Then was an opportune time to test by injunction or other proceedings the legality of the various steps being taken.'

"And in the city of Muskogee et al. v. Rambo et al., 40 Okla. 672, 138 Pac. 567, Mr. Chief Justice Kane, speaking for the court, says: 'It was the duty of the property owners, upon the publication of the ordinance creating the sewer district, or upon discovering that labor and money were about to be expended in the actual construction of a public work which would tend to benefit their property, to promptly take action, by injunction or otherwise, against the proceedings providing for such improvements, if in their judgment they are irregular. Under the rule therein laid down, the property owners cannot stand by without objection or protest while the public work is in progress, and when the entire work is completed, and they are called upon to pay their respective assessments for the benefits received, then invoke relief by injunction in a court of equity. * * *' "

In Kerker et al. v. Bocher et al., 20 Okla. 729, 95 Pac. 981, Mr. Chief Justice Williams, says:

"Every person as a member of a municipal community, thereby enjoying the incident benefits, takes notice of the accompanying obligations. Streets are to be laid out, graded, paved, and lighted. The constabulary must be maintained to enforce peace and preserve order. Sewerage systems and water supplies must be provided. No one is entitled to enjoy these advantages and to be permitted to successfully contend that the laws * * * are invalid, and thereby escape the resultant burdens. The citizen of the modern municipality and property owner thereof take notice of such necessities. * * * No man can expect to have property in cities, abutting on public thoroughfares and streets, without bearing the burdens of special taxation; * * * and he acquires his property with the full knowledge of the fact that the legislative power of the state can be exercised to levy and provide for an assessment or special tax for such improvements. * * *"

In the City of Bartlesville et al. v. Holm et al., 40 Okla. 473, 139 Pac. 273, Mr. Justice Kane, in delivering the opinion of the court, says:

"The great weight of authority leans toward a rather strict and technical application of the doctrine of estoppel, and is to the effect that, where there is jurisdiction, one who stands idly by while a public work is being prosecuted, with full knowledge, by himself or agent, that large expenditures are being made for such public improvement which will benefit his property, or fails to appear at the proper time and present his objections, will not, after the work is completed, be afforded relief against assessments levied against the property benefited to pay for such work, either in courts of law or equity."

See, also, case of Ardmore v. Appollos, 62 Okla. 232, 162 Pac. 211, wherein the case of Morrow v. Barber Asphalt Co., 27 Okla. 247, 111 Pac. 198, is discussed and distinguished from the rule laid down in the cases above cited.

In our judgment, the plaintiff in error has not presented her case so as to appeal to the conscience of a court of equity. The plaintiff in error waited too long to invoke the aid of the court of equity. She knew that these improvements cost money; that they would benefit her property; she evidenced a desire or willingness to have the improvements, but objects to contributing her part of the cost thereof. She is not entitled to relief.

The judgment of the lower court is therefore affirmed.

By the Court: It is so ordered.